SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| SAVE OUR VOTE, OPPOSING C-03-2012, an unincorporated Arizona political committee, LISA GRAY, a qualified elector and taxpayer of the State of Arizona, JAIME A. MOLERA, a qualified elector and taxpayer of the State of Arizona, BARRY HESS, a qualified elector and taxpayer of the State of Arizona, and the LEAGUE OF WOMEN VOTERS OF ARIZONA, an Arizona non-profit corporation, STEVE GALLARDO, a qualified elector and taxpayer of the State of Arizona, MARY ROSE WILCOX, a qualified elector and taxpayer of the State of Arizona | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Arizona Supreme Court No. CV-12-0272-AP/EL  Maricopa County Superior Court No. CV2012-010717  **O P I N I O N** |
| Plaintiffs/Appellees, | ) ) | |
| v. | ) ) | |
| KEN BENNETT, in his official capacity as Secretary of State of the State of Arizona, | ) ) ) ) | |
| Defendant, and | ) ) ) ) | |
| OPEN GOVERNMENT COMMITTEE SUPPORTING C-03-2012, an unincorporated Arizona political committee, | ) ) ) ) ) | |
| Real Party in Interest/ Appellant. | ) ) ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Mark H. Brain, Judge

**REVERSED**

_____

```
SNELL & WILMER L.L.P.                                    Phoenix
     By   Michael T. Liburdi
          Adam E. Lang
          Eric H. Spencer
Attorneys for Save Our Vote, Opposing C-03-2012, Lisa Gray,
Jaime A. Molera, Barry Hess, League of Women Voters of Arizona,
Steve Gallardo, and Mary Rose Wilcox

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL               Phoenix
     By   Michele L. Forney, Assistant Attorney General
Attorney for Ken Bennett

LEWIS AND ROCA LLP                                      Phoenix
     By   Kimberly A. Demarchi
          William G. Voit
Attorneys for Open Government Committee

GAMMAGE & BURNHAM P.L.C.                                Phoenix
     By   Grady Gammage, Jr.
          Cameron C. Artigue
Attorneys for Amicus Curiae Southern Arizona Leadership Council

SCHARF-NORTON CENTER FOR CONSTITUTIONAL LITIGATION      Phoenix
AT THE GOLDWATER INSTITUTE
     By   Clint Bolick
          Carrie Ann Sitren
Attorneys for Amicus Curiae Goldwater Institute

LAW OFFICE OF HARRY M. KRESKY                        New York, NY
     By   Harry M. Kresky

And

PIETZSCH, BONNETT & WOMACK, P.A.                        Phoenix
     By   Michael E. Pietzsch
Attorneys for Amici Curiae Committee for a Unified
Independent Party

VINCE RABAGO LAW OFFICE PLC                              Tucson
     By   Vince Rabago
Attorney for Amici Curiae Maricopa County Democratic Party,
Pima County Democratic Party, Ann Wallack, Jeffrey J. Rogers,
Joe Robison, and Jackie Dierks-Walker

JENNINGS, STROUSS, & SALMON, P.L.C.                     Phoenix
     By   Shanna N. Orlich
Attorney for Amicus Curiae Arizona Latino Republican Association
```

ARIZONA HOUSE OF REPRESENTATIVES                              Phoenix
    By   Peter A. Gentala

And

ARIZONA STATE SENATE                                          Phoenix
    By   Gregrey G. Jernigan
Attorney for Amici Curiae Steve Pierce and Andrew Tobin
_____

**B A L E S**, Vice Chief Justice

¶1      The question presented is whether Proposition 121, a constitutional amendment proposed by voter initiative, complies with the separate amendment rule of Article 21, Section 1 of the Arizona Constitution.  This rule requires that when more than one constitutional amendment is proposed, voters must be allowed to vote for or against each one separately.  Proposition 121 would amend the Constitution to replace partisan primary elections with an open "top two primary" in which all candidates appear on the same ballot and the two receiving the most votes, regardless of party, advance to the general election.

¶2      The trial court ruled that Proposition 121 violates the separate amendment rule and enjoined the Secretary of State from placing the measure on the November 2012 general election ballot.  On August 17, 2012, we entered an order reversing the trial court's judgment and stating that an opinion would follow. This is that opinion.

**I.**

¶3      Since statehood, Arizona's Constitution has provided

that "[t]he Legislature shall enact a direct primary election law." Ariz. Const. art. 7, § 10.[1]  This requirement was one way in which the Constitution sought to ensure popular control over government through the electoral process.  *See* John D. Leshy, *The Making of the Arizona Constitution*, 20 Ariz. St. L.J. 1, 62 (1988).

¶4        Consistent with the constitutional directive, Arizona's first state legislature enacted a law "to provide for primary elections."  1912 Ariz. Sess. Laws, ch. 84 (1st Spec. Sess.).  This law established the framework that remains in place today.  A "recognized" party - that is, one entitled to have its candidates appear on the general election ballot - must nominate its candidates through the primary election.  A.R.S. §§ 16-301, -801, -804 (Supp. 2012).  In the primary, only voters who are registered with a particular party, or not registered

---

[1]    Article 7, Section 10 now provides:

> The Legislature shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county, and city offices, including candidates for United States Senator and for Representative in Congress.  Any person who is registered as no party preference or independent as the party preference or who is registered with a political party that is not qualified for representation on the ballot may vote in the primary election of any one of the political parties that is qualified for the ballot.

The second sentence in Article 7, Section 10 was added in 1998.

with another recognized party (e.g., independent voters), may vote the party's ballot. *Id.* § 16-467. The winner of the primary appears on the general election ballot along with the nominees of other recognized parties. *See id.* § 16-501.[2]

¶5        Since statehood, the laws regarding primary elections have also regulated the structure of recognized parties by requiring them to elect "precinct committeemen." 1912 Ariz. Sess. Laws, ch. 84, § 32 (1st Spec. Sess.). Committeemen are elected at the primary election; they constitute the party's county- and district-level committees, and in turn select the party's state leadership. *See* A.R.S. §§ 16-821(A), -823, -825. Arizona statutes further specify that the committeemen, party committees, or the state chair will (1) choose a replacement candidate if a party's candidate dies or resigns before an election, *id.* § 16-343, (2) receive funds contributed to a recognized party by citizens using the state income tax form, *id.* § 16-807, (3) receive a free copy of voter registration data, *id.* § 16-168(C), and (4) appoint candidates to serve as the party's presidential electors, *id.* § 16-344. Public funds

---

[2]       Candidates who are not affiliated with a recognized party may qualify for the general election ballot by submitting nominating petitions signed by 3 percent of all the unaffiliated voters in the relevant electoral district. A.R.S. § 16-341. In contrast, candidates from recognized parties generally need to obtain signatures from only .5 percent of their party's registered voters to qualify for the ballot. *Id.* § 16-322.

pay for the primary elections used to select precinct committeemen and the party's candidates for the general election. *See id*. §§ 16-503, -511.

¶6    Proposition 121, titled the "Open Elections/Open Government Act," purports to "[a]bolish[] the existing system of taxpayer-funded primary elections to select nominees for political parties" and to "[c]reate[] in its place an Open 'Top Two' Primary Election." Proposition 121, § 2(B) (2012). Under this proposal, all candidates for an office, regardless of party, appear on the same ballot and voters may vote for any candidate; the two candidates who receive the most votes then face each other in the general election. *See id.*

¶7    The proposition would replace Article 7, Section 10 of Arizona's Constitution with a new Section 10 containing eight subparts. *See* Ariz. Sec'y of State, *2012 Publicity Pamphlet* 68-69 (2012) (reproducing text of proposition), *available at* http://www.azsos.gov/election/2012/Info/PubPamphlet/english/e-book.pdf. The new section does not apply to non-partisan or presidential preference elections; it recognizes a right to vote in primary and general elections for the candidate of choice regardless of a voter's party affiliation; and it outlines procedures for the top two primary. Proposition 121, § 3 (proposed Sections 10(A) – (C)). New Section 10(D) provides that the number of voter signatures a candidate must obtain to

6

qualify for the ballot shall be the same for all candidates regardless of party affiliation. *Id.* More generally, new Section 10(H) declares that all qualified voters and candidates shall be treated equally by laws governing elections regardless of party affiliation. *Id.* Candidates may choose to identify their party affiliation on nomination petitions and the ballot, but government-issued voter education materials and the ballot will prominently note that a candidate's identified affiliation does not indicate a party's nomination or endorsement. *Id.* (proposed Sections 10(E) – (F)).

¶8 Proposition 121 also contains a proposed Section 10(G) addressing the rights of political parties:

> Nothing in this section shall restrict the right of individuals to join or organize into political parties or in any way restrict the right of private association of political parties. Nothing in this section shall restrict the parties' right to contribute to, endorse, or otherwise support or oppose candidates for elective office. Political parties may establish such procedures as they see fit to elect party officers, endorse or support candidates, or otherwise participate in all elections, but no such procedures shall be paid for or subsidized using public funds.

¶9 Opponents of Proposition 121 – a political committee named "Save Our Vote, Opposing C-03-2012" along with several individual voters and the League of Women Voters (collectively "Opponents") – filed this action seeking to enjoin the Secretary of State from placing the measure on the ballot because it

7

violated the separate amendment rule of Article 21, Section 1 of the Arizona Constitution. That rule provides:

> If more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such manner that the electors may vote for or against such proposed amendments separately.

Ariz. Const. art. 21, § 1. The Opponents also argued that the petition signature sheets circulated to qualify the measure for the ballot violated A.R.S. § 19-102(A) because the 100-word description of the initiative was incomplete, misleading, and argumentative.

¶10 The trial court accepted the Opponents' argument that proposed Section 10(G) is a separate amendment from the other provisions in Proposition 121. Citing *Ariz. Together v. Brewer*, 214 Ariz. 118, 121 ¶ 6, 149 P.3d 742, 745 (2007), the court noted that initiatives are evaluated under the "common purpose or principle" test to determine whether they violate the separate amendment rule and concluded that most of the provisions of Proposition 121 serve to establish a workable open primary. But, the trial court concluded, "the proposed prohibition of funding [in Section 10(G)] is entirely different, and there is no good reason that a vote for or against that topic should be bundled with a vote on an open primary." Without addressing the Opponents' argument regarding the 100-word description on the signature sheets, the trial court

8

entered judgment for the Opponents and enjoined the Secretary from placing Proposition 121 on the ballot.

¶11    The political committee supporting Proposition 121 – Open Government Committee Supporting C-03-2012 ("Supporters") - appealed to this Court pursuant to A.R.S. § 19-122(C).  After expedited briefing, we issued an order reversing the trial court's judgment.[3]

## II.

¶12    We review de novo whether a proposition complies with the separate amendment rule.  *Ariz. Together*, 214 Ariz. at 120 ¶ 2, 149 P.3d at 744.  "[W]e examine whether provisions of a proposed amendment are sufficiently related to a common purpose or principle that the proposal can be said to constitute a consistent and workable whole on the general topic embraced, that, logically speaking, . . . should stand or fall as a whole."  *McLaughlin v. Bennett*, 225 Ariz. 351, 354 ¶ 8, 238 P.3d 619, 622 (2010) (second alteration in original) (internal quotation marks omitted).  This test requires us to consider (1) whether a proposition's provisions are "*topically related*," and (2) whether they are "*sufficiently interrelated* so as to form a consistent and workable proposition."  *Ariz. Together*, 214 Ariz.

---

[3]    On November 6, 2012, the voters rejected Proposition 121. Ariz. Sec'y of State, *State of Arizona Official Canvas* 18 (Dec. 3, 2012), *available at* http://www.azsos.gov/election/2012/General/Canvass2012GE.pdf.

9

at 121 ¶ 6, 149 P.3d at 745.

¶13    The provisions in Proposition 121 are topically related.  They concern whether political parties and their candidates should be afforded favored treatment - through taxpayer-funded partisan primaries, the provisions of laws or regulations, or public funding - with regard to Arizona elections.  *Cf. McLaughlin*, 225 Ariz. at 354 ¶ 9, 238 P.3d at 622 (assuming that provisions regarding elections for public office and union elections were topically related because each pertained to secret ballots).

¶14    The common topicality of the provisions is not undermined by the fact that the Supporters identify the Proposition's purpose as replacing the existing system of taxpayer-funded primary elections with a non-partisan top two primary.  Eliminating partisan primaries is a particular application of the more general principle that the state should not favor political parties or party-affiliated voters in election-related matters.  Moreover, the favored status that recognized parties enjoy under the partisan primary system and other election laws is the reason the state has an interest in regulating internal party governance.  *See Ariz. Libertarian Party v. Schmerl*, 200 Ariz. 486, 490-92 ¶¶ 14-20, 28 P.3d 948, 952-54 (App. 2001) (noting that the distinctive role recognized parties play in selecting candidates allows states to regulate

10

their internal structure and afford them advantages such as preferential access to voter registration data and eligibility for voluntary taxpayer contributions); *cf. Cal. Democratic Party v. Jones*, 530 U.S. 567, 577 (2000) (noting that states may require parties to select nominees through primaries in order to resolve intraparty disputes in a democratic fashion).

¶15    We turn to whether the provisions of Proposition 121 are sufficiently interrelated to comply with the separate amendment rule.  This rule does not require "that all components of a provision be logically dependent on one another."  *Ariz. Together*, 214 Ariz. at 122 ¶ 10, 149 P.3d at 746.  Instead, we measure the provisions against objective factors, such as

> whether various provisions are facially related, whether all the matters addressed by an initiative concern a single section of the constitution, whether the voters or the legislature historically has treated the matters addressed as one subject, and whether the various provisions are qualitatively similar in their effect on either procedural or substantive law.

*Id.* (quoting *Korte v. Bayless*, 199 Ariz. 173, 177 ¶ 11, 16 P.3d 200, 204 (2001)).  Although these factors are not exclusive and might not all apply in a particular case, they guide our analysis.  *McLaughlin*, 225 Ariz. at 354 n.2, ¶ 10, 238 P.3d at 622 n.2.

¶16    The provisions of Proposition 121 are not only facially related, but also logically related.  Section 10(G)

11

declares that public funds shall not be used to pay for or subsidize procedures used by political parties "to elect party officers, endorse or support candidates, or otherwise participate in all elections." This broad prohibition on public funding of party activities logically embraces Section 10(C)'s elimination of partisan primaries. If public monies cannot be used to support a party's endorsement of candidates or participation in elections generally, then such funds cannot be used to pay for partisan primaries to identify a party's official candidate for the general election.

¶17    This aspect of Proposition 121 distinguishes this case from *Clean Elections Inst., Inc. v. Brewer*, 209 Ariz. 241, 99 P.3d 570 (2004), which found a separate-amendment violation in a ballot measure related to the Citizens Clean Elections Commission. One provision would have prohibited public funding of candidates' political campaigns, thereby displacing provisions of the Clean Elections Act that require such funding. *Id.* at 246 ¶ 18, 99 P.3d at 575. Another provision would have eliminated the statutorily mandated funding for all the Commission's other duties, including voter education and debate programs that were unaffected by the provision barring funding of political campaigns. *Id.* at 245-46 ¶¶ 13, 19, 99 P.3d at 574-75. The Court found no facial relationship between these provisions because they did not advance any "common purpose or

12

principle." *Id.* at 246 ¶ 20, 99 P.3d at 575. That is, the candidate funding prohibition did not logically imply eliminating the Commission's funding dedicated to other purposes.

¶18 *Clean Elections* is also distinguishable because there the Court relied on predictions about the views of a "reasonable voter," noting that "[w]e cannot conclude from any objective factor that voters favoring one proposition would likely favor the other." *Id*. at 247 ¶ 25, 99 P.3d at 576. Although *Clean Elections* followed prior cases in considering the views of a "reasonable voter," *see id*. at 246 ¶ 17, 99 P.3d at 575, we have since abandoned that approach, and now "apply[] the *topicality* and *interrelatedness* approach to assess whether a common purpose or principle joins the provisions of a proposed amendment," *Ariz. Together*, 214 Ariz. at 124 ¶ 21, 149 P.3d at 748.

¶19 Applying the interrelatedness approach here, we note the provisions of Proposition 121 all concern Article 7, Section 10 of the Arizona Constitution. Moreover, as noted, *supra* ¶ 5, Arizona's legislature has historically treated the matters addressed in Proposition 121 as one subject, inasmuch as the "direct primary law" enacted by the first state legislature embraced not only the creation of partisan primary elections but also the election of precinct committeemen and other aspects of internal party governance. *See* 1912 Ariz. Sess. Laws, ch. 84, §

32 (1st Spec. Sess.). Finally, the provisions are "qualitatively similar" in their effect on procedural or substantive law. Replacing the partisan primary with an open primary in which candidates and voters participate without regard to party affiliation is qualitatively similar in its effect to the broader provisions in Proposition 121 mandating a level playing field regardless of party and barring public funding for specified political party activities. *Cf. Ariz. Together*, 214 Ariz. at 123 ¶ 17, 149 P.3d at 747 (concluding that the provisions were qualitatively similar where they each affected substantive law, pertained to the same subject, and derived meaning and effect from each other).

¶20    In arguing that Proposition 121 does not have sufficient interrelatedness, the Opponents note that two other states have adopted open primaries while preserving state-funded elections of party precinct committeemen. The Opponents, and certain amici supporting their position, agree with the trial court that "there is no good reason" that a vote for or against funding of certain party activities "should be bundled with a vote on an open primary." Opponents also contend that if Proposition 121 were adopted, it would require changes in a large number of Arizona statutes.

¶21    We are not persuaded. The fact that the objectives of a constitutional measure could be achieved by an alternative

14

means does not itself establish a violation of the separate amendment rule. *See Korte*, 199 Ariz. at 178 ¶ 16, 16 P.3d at 205 (noting that "a proposal can comply with the [separate amendment] rule even though alternative proposals exist"). The separate amendment rule does not require that a constitutional amendment identify the most narrowly tailored means for achieving identified goals, only that the provisions have a sufficient common purpose or principle. *See id.* ¶ 15, 16 P.3d at 205 (holding that "multifaceted approach" to amending provisions in Article 10 regarding state trust lands did not violate separate amendment rule). Nor does the fact that a proposition, if adopted, would require extensive statutory changes necessarily suggest that the proposition violates the separate amendment rule. *See Ariz. Together*, 214 Ariz. at 123 ¶ 15, 149 P.3d at 747. Finally, assertions that there is no "good reason" to combine Proposition 121's different provisions into one ballot measure appear to speculate about the views of hypothetical voters. As noted, *supra* ¶ 18, our separate amendment analysis no longer turns on whether a reasonable voter would likely support one provision in a proposed constitutional amendment without supporting another, but rather on the topicality and interrelatedness of the provisions.

**¶22** Because the provisions contained in Proposition 121 share both topicality and interrelatedness, we conclude they are

"sufficiently related to a common purpose or principle" and do not violate the separate amendment rule.  *Id.* at 125 ¶ 23, 149 P.3d at 749 (quoting *Korte*, 199 Ariz. at 177 ¶ 10, 16 P.3d at 204).

## III.

¶**23**     The Opponents also argued below that the Secretary should be enjoined from placing Proposition 121 on the ballot because the petition signature sheets for the measure violated A.R.S. § 19-102(A).  This statute requires petition signature sheets to include "a description of no more than one hundred words of the principal provisions of the proposed measure or constitutional amendment," followed by this notice:

> Notice: This is only a description of the proposed measure (or constitutional amendment) prepared by the sponsor of the measure.  It may not include every provision contained in the measure.  Before signing, make sure the title and text of the measure are attached. You have the right to read or examine the title and text before signing.

*Id.*

¶**24**     The petition signature sheets for Proposition 121 contained this description:

> This measure will allow all Arizonans, regardless of party affiliation, to vote in a single open primary for candidates of their choice.  The two candidates who receive the most votes in the primary will compete in the general election.  There will be a level playing field for all voters and candidates, and the current system of taxpayer-funded partisan primaries will be abolished.  This reform will promote open government and encourage the election of candidates

16

who will work together for the good of the state. This description was followed by the required notice that it was prepared by the sponsor and might not include every provision contained in the measure and that voters were entitled to read the measure's title and text before signing.

¶25　　　The Opponents argued that the 100-word description violates § 19-102(A) because it (1) omits reference to the exclusion of presidential and non-partisan elections, (2) contains misleading statements as to its effects, and (3) contains impermissible argument and advocacy.

¶26　　　Alleged errors in the form of initiative petitions are reviewed for "substantial compliance." *Wilhelm v. Brewer,* 219 Ariz. 45, 46 ¶ 2, 192 P.3d 404, 405 (2008). Descriptive information included on petition signature sheets will not invalidate the petitions unless it is fraudulent or creates a significant danger of confusion or unfairness. *See Kromko v. Superior Court*, 168 Ariz. 51, 58-59, 811 P.2d 12, 19-20 (1991).

¶27　　　The Opponents have not shown that the 100-word description fails to substantially comply with § 19-102(A). The failure to note that open primaries would not apply to presidential elections or non-partisan elections is not a fatal omission, as it does not render the description fraudulent or misleading, particularly in light of the accompanying notice regarding the description. The Opponents object that the

17

description fails to completely describe the effects of implementing Proposition 121. Section 19-102(A), however, requires only a description of the principal provisions, not a complete description, and the accompanying disclaimer expressly notes that the description might not include all the provisions in the measure. Finally, the Opponents protest that the description contains "impermissible" argument and advocacy, focusing on the language about a "level playing field" and the concluding sentence stating "[t]his reform will promote open government and encourage the election of candidates who will work together for the good of the state."

¶28 Section 19-102(A) does not by its terms require the sponsor's 100-word description to be impartial. *Cf.* A.R.S. § 19-124(B) (requiring legislative council to prepare "impartial analysis" of ballot measures). Although the summary here – like those accompanying other ballot measures – describes the intended effects of the measure in a way that might appeal to prospective voters, that fact does not mean the signature sheets failed to substantially comply with the statutory requirements. We conclude that the 100-word description does not create a substantial danger of fraud, confusion, or unfairness sufficient to invalidate the petition signature sheets. *Cf. Kromko*, 168 Ariz. at 59-60, 811 P.2d at 20-21 (refusing to strike petitions based on allegedly incomplete and misleading information in

18

extraneous short titles on petition sheets).

## IV.

¶**29**      Various arguments have been made to this Court whether the proposed top two primary would be desirable or instead detrimental as a matter of public policy.  These arguments are misdirected.  Our conclusion that Proposition 121 satisfies the separate amendment rule says nothing about whether the measure should be approved.  If a ballot measure meets the statutory and constitutional requirements to appear on the ballot, its wisdom as a policy matter is for the voters to decide.  *See Korte*, 199 Ariz. at 178 ¶ 16, 16 P.3d at 205.

¶**30**      For the reasons stated, we reverse the trial court's judgment.


_____

Scott Bales, Vice Chief Justice


CONCURRING:


_____

Rebecca White Berch, Chief Justice


_____

A. John Pelander, Justice


_____

Robert M. Brutinel, Justice


19

_____
Patricia A. Orozco, Judge*


*Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Patricia A. Orozco, Judge of the Arizona Court of Appeals, Division One, was designated to sit in this matter.