IN THE

# SUPREME COURT OF THE STATE OF ARIZONA
### IN DIVISION

─────────────

ARIZONA CHAPTER OF THE ASSOCIATED GENERAL CONTRACTORS OF
AMERICA, ET AL.,
*Petitioners/Appellants,*

*v.*

CITY OF PHOENIX, ET AL.,
*Respondents/Appellees,*

BUILDING A BETTER PHOENIX, A POLITICAL COMMITTEE,
*Real Party in Interest/Appellee.*

─────────────

No. CV-19-0158-PR
Filed July 24, 2019

─────────────

Appeal from the Superior Court in Maricopa County
The Honorable Sherry K. Stephens, Judge
No. CV2019-000604
**AFFIRMED**

Memorandum Decision of the Court of Appeals, Division One
1 CA-CV 19-0257 EL
Filed June 6, 2019
**AFFIRMED**

─────────────

COUNSEL:

Roy Herrera, Mark S. Kokanovich, Daniel A. Arellano, Ballard Spahr LLP, Phoenix, Attorneys for Arizona Chapter of the Associated General Contractors of America, et al.

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Building a Better Phoenix

---

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, JUSTICE BOLICK, and JUSTICE GOULD joined.

JUSTICE TIMMER, opinion of the Court:

¶1        At issue here is whether the "Building a Better Phoenix Act" initiative measure qualifies for placement on the City of Phoenix's August 2019 special election ballot.  We must decide whether petition signatures are void pursuant to A.R.S. § 19-118.01(A) because the measure's proponent paid petition circulators by the signature and whether the measure's 100-word description fails to comply with A.R.S. § 19-102(A).  We previously issued an order affirming the lower courts' decisions that the initiative measure qualifies for the ballot.  We now explain our reasoning.

## BACKGROUND

¶2        Light rail in Phoenix is funded from many sources, including rider fares, advertising proceeds, and regional and federal funds.[1]  Before 2015, Phoenix imposed a transaction privilege and use tax to further fund the city's transportation network, which included light rail.  In 2015, voters passed Proposition 104, which set that tax at 0.7% until 2051 and created a Citizens Transportation Committee to review all tax revenue expenditures. *See* Phx. City Clerk, *August 25, 2015 Sample Ballot: Mayor and Council Election* (2015), https://www.phoenix.gov/cityclerksite/Documents/d2sb .pdf.  Proposition 104 authorized use of the tax revenues, among other things, to "[e]xpand[] light rail . . . to serve more Phoenix neighborhoods and employment, education and entertainment centers" as depicted on an included map. *Id.*  Proposition 104 did not authorize use of these funds for light rail maintenance and repair. *See id.*

---

[1]    *See* Valley Metro Rail, Inc., *Valley Metro Rail FY20 Budget* 7 (2019), https://www.valleymetro.org/sites/default/files/uploads/event-resources/vmr_fy20_budget_book_adopted.pdf.

¶3        Building a Better Phoenix ("BBP"), a political action committee, sought to amend the Phoenix City Charter to discontinue "light rail extensions" and redirect local sales tax funding for light rail extensions to "infrastructure improvements." To do so, BBP filed an application in September 2018 with the City Clerk of the City of Phoenix, *see* A.R.S. § 19-143(B), seeking placement of the "Building a Better Phoenix Act" initiative measure (the "Initiative") on the August 2019 special election ballot. Upon receipt of the application, the City Clerk's office assigned the Initiative petition a serial number, *see* A.R.S. § 19-111(B), which enabled BBP to gather the number of valid signatures required to qualify the Initiative for the ballot. To that end, BBP hired a commercial petition circulation firm, which paid circulators on a per-signature basis.

¶4        Arizona Chapter of the Associated General Contractors of America and David Martin (collectively, "Contractors") filed a complaint pursuant to A.R.S. § 19-122(C) seeking to enjoin placement of the Initiative on the ballot. They allege that petition circulators were paid by the signature in violation of § 19-118.01 and that the 100-word summary circulated with the petition created a significant danger of confusion or unfairness in violation of § 19-102(A). The superior court denied relief, and the court of appeals affirmed. *Ariz. Chapter of the Associated Gen. Contractors of Am. v. City of Phoenix*, No. 1 CA-CV 19-0257 EL, 2019 WL 2399703, at *1 ¶ 3, *6 ¶ 25 (Ariz. App. June 6, 2019) (mem. decision).

¶5        On expedited review, we affirmed the superior court's judgment in an order filed June 12, 2019 (again, with an opinion to follow). We have jurisdiction over this matter under article 6, section 5 of the Arizona Constitution.

## DISCUSSION
### I.    Payment by the signature

¶6        Section 19-118.01(A) provides that "[a] person shall not pay or receive money or any other thing of value based on the number of signatures collected on a statewide initiative or referendum petition." Signatures collected in violation of this provision are "void and shall not be counted in determining the legal sufficiency of the petition." *Id.* Contractors argue BBP violated § 19-118.01(A) by paying petition circulators based on the number of signatures collected. Because voiding the signatures collected in violation of § 19-118.01(A) would leave BBP without enough signatures to qualify the Initiative for the ballot,

Contractors assert that the superior court was required to enjoin placement of the Initiative on the ballot.

¶7 Resolution of this argument turns on whether § 19-118.01(A) applies to local measures such as the Initiative. We review issues of statutory interpretation de novo. *Molera v. Reagan*, 245 Ariz. 291, 294 ¶ 8 (2018). In doing so, "[w]e interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). Our goal is to effectuate legislative intent. *Leach v. Reagan*, 245 Ariz. 430, 438 ¶ 33 (2018).

¶8 Section 19-118.01(A) applies on its face only to "statewide" initiative and referendum petitions, and the Initiative is a local measure. Contractors nevertheless argue that § 19-118.01(A) applies by virtue of A.R.S. § 19-141(A).[2] Section 19-141(A) provides that chapter 1 of title 19, which regulates initiatives, referenda, and recalls and includes § 19-118.01(A), "applies to the legislation of cities, towns and counties, *except as specifically provided to the contrary in* [*article 4 of chapter 1*]." (Emphasis added.) Because nothing in article 4 expressly exempts § 19-118.01(A) from applying to local measures, Contractors argue that § 19-118.01(A) applies here. We are unpersuaded.

¶9 Contractors' interpretation of § 19-141(A) as applying § 19-118.01(A) to local measures would render the word "statewide" in § 19-118.01(A) superfluous. "A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise*, 245 Ariz. at 568 ¶ 11. We are particularly persuaded that the legislature did not intend the word "statewide" to be meaningless as it added § 19-118.01(A) in 2017, along with other statutes addressing statewide measures, presumably knowing that § 19-141(A) existed. *See City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, 144 ¶ 19 (2017) ("[W]e presume that the legislature, when it passes a statute, knows the existing laws." (quoting *Daou v. Harris*, 139 Ariz. 353, 357 (1984))). Under Contractors' argument, § 19-141(A) would apply § 19-118.01(A) to local measures whether or not the latter statute included the adjective "statewide," thus rendering that term superfluous.

---

[2] Before the court of appeals, Contractors also argued that the Phoenix City Charter adopts title 19, including § 19-118.01(A), as a local requirement. They do not repeat this argument here, so we do not address it.

¶10   Relatedly, interpreting § 19-141(A) as not applying § 19-118.01(A) to local measures harmonizes these statutes. *See Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 123 ¶ 17 (2015) (noting that "when possible, we harmonize apparently conflicting statutes" (internal quotation marks omitted) (quoting *Estate of Hernandez v. Ariz. Bd. of Regents*, 177 Ariz. 244, 249 (1994))). Section 19-141(A) would apply chapter 1, title 19 statutes without a "statewide" restriction to local measures, and § 19-118.01(A), per its language, would apply only to statewide measures.

¶11   Contractors argue that their interpretation of § 19-141(A) as applying "statewide" restricted provisions to local measures is supported by examining § 19-111(D), enacted in 2014. Like § 19-118.01(A), § 19-111(D), which concerns circulation training materials, only applies to "statewide" measures. Significantly, the last sentence in § 19-111(D) provides that "[n]otwithstanding § 19-141, this subsection does not apply to initiative, referendum or recall petitions for cities, towns and counties." Contractors assert that "[i]f use of the word 'statewide' were enough to make a provision not apply locally, the subsequent 'notwithstanding' language in § 19-111(D) would have been unnecessary." They conclude that the legislature's omission of similar language in § 19-118.01(A) means the statute applies to local measures per § 19-141(A). *Cf. Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 349 ¶ 15 (2011) (stating that including a requirement for Spanish-language forms in some statutes but not in A.R.S. § 20-259.01 indicates that the legislature intentionally omitted this requirement).

¶12   The "notwithstanding" sentence in § 19-111(D) could evidence the 2014 legislature's view that § 19-141(A) might otherwise apply, or it may have been included out of caution to remove any doubt about that statute's inapplicability to local measures. Regardless, we are unconvinced that the 2017 legislature's omission of similar language in § 19-118.01(A) evidenced an intent to apply that provision to local measures. The 2017 legislature could have reasonably concluded that § 19-118.01(A)'s express reference to "statewide" initiative and referendum petitions sufficiently precluded application to local measures. Section 19-118.01(A) is thus unlike § 20-259.01, at issue in *Ballesteros*, which had no language requiring a Spanish-language insurance form. *See Ballesteros*, 226 Ariz. at 349 ¶ 15. Also, the 2017 legislature plainly focused on "statewide" measures when enacting § 19-118.01 by finding that "[s]tatewide initiative measures enact broad and sweeping changes to the laws of this state" and that protecting the integrity of that process "is a

significant state interest." *See* 2017 Ariz. Sess. Laws, ch. 52, § 5 (1st Reg. Sess.).

¶13　　　We also disagree that § 19-111(D)'s "notwithstanding" language shows that § 19-141(A) applies to "statewide" restricted statutes because the legislature has also taken the opposite position. Specifically, to apply A.R.S. § 19-121.01(A)(1)(h) to local measures, the 2015 legislature did not rely on § 19-141(A) but instead deleted the words "statewide ballot measures only." *See* 2015 Ariz. Sess. Laws, ch. 285, § 5 (1st Reg. Sess.). If the legislature had viewed § 19-141(A) as applying § 19-121.01(A)(1)(h) to local measures even with the "statewide" language, as Contractors argue, there was no need to delete that language.

¶14　　　In sum, because § 19-118.01(A) applies only to statewide measures, the superior court correctly refused to apply that provision here.

## II.　　100-word description

¶15　　　Section 19-102(A) requires an initiative petition to set forth "a description of no more than one hundred words of the principal provisions of the proposed measure or constitutional amendment." The description need not be impartial nor "detail every provision." *Molera*, 245 Ariz. at 295 ¶ 13; *Save Our Vote, Opposing C-03-2012 v. Bennett*, 231 Ariz. 145, 152 ¶ 27 (2013). But we will invalidate a petition if the description is "fraudulent or creates a significant danger of confusion or unfairness." *Molera*, 245 Ariz. at 295 ¶ 13 (quoting *Save Our Vote*, 231 Ariz. at 152 ¶ 26). In making this determination, we consider the meaning a reasonable person would ascribe to the description. *Molera*, 245 Ariz. at 297 ¶ 27 ("We hold § 19-102(A) requires an objective standard for evaluating the description of the actual provisions rather than crediting the drafters' subjective intent.").

¶16　　　The 100-word description in the Initiative petition provided:

> This initiative measure amends the City Charter to terminate construction of all future light rail extensions and redirect the funds toward infrastructure improvements. Revenues from terminating light rail extensions other than the South Phoenix extension will fund infrastructure improvements throughout the City. Revenues from terminating the South Phoenix light rail extension will fund infrastructure improvements in South Phoenix (defined as South Mountain Village plus the area

between Seventh Street, Seventh Avenue, Jefferson Street and the Salt River). A Citizens Transportation Committee will solicit public input, make recommendations to the City Council regarding infrastructure improvements, and review transportation expenditures.

As required by § 19-102(A), the petition also stated that the Initiative sponsor had prepared the description, which "may not include every provision contained in the measure," and advised petition signers of their "right[s] to read or examine the title and text [of the measure] before signing."

**¶17**　　　　Contractors argue that the 100-word description was misleading in three respects and therefore created a significant danger of both confusion and unfairness. First, Contractors assert that the description's references to "revenues" falsely suggest that terminating light rail extensions would generate income. We disagree. The first sentence speaks of "redirect[ing]" existing funds from future light rail extension projects. Read in context, a reasonable person would know that the "revenues" mentioned in the succeeding sentences refer to the redirected funds.

**¶18**　　　　Second, Contractors argue that the summary's statement that funds will be redirected from light rail extensions is misleading because only funds controlled by the City of Phoenix can be redirected; regional and federal funding for light rail in Phoenix would purportedly cease if the Initiative passes. We have never required an initiative description to explain all potential effects of a measure. *See Save Our Vote*, 231 Ariz. at 152 ¶ 27 (rejecting argument that a description failed to "completely describe the effects of implementing" the measure because § 19-102(A) "requires only a description of the principal provisions, not a complete description"). The proper forum to argue the consequences of passing the Initiative is in statements of support and opposition, editorials, and the like. *See Tilson v. Mofford*, 153 Ariz. 468, 473 (1987) ("[T]he proper place to argue about the potential impact of an initiative is in the political arena, in speeches, newspaper articles, advertisements and other forums.").

**¶19**　　　　Third, Contractors argue that the summary is misleading because it proposes to redirect "light rail extension[]" funds to "infrastructure improvements" but fails to reveal that "infrastructure improvements," as defined in the Initiative, excludes repairs to light rail.

Consequently, Contractors contend, signers were not informed that passing the Initiative would terminate funding for light rail upkeep as well as expansion.

**¶20**        Contractors' argument fails because the Initiative does not, in fact, eliminate funding for upkeep of the existing light rail system.  The Initiative defines "light rail extensions," as "any and all construction, development, extension or expansion of, or improvement to, light rail transit authorized by Proposition 104."  Thus, the light rail funds at issue in the Initiative are only those dedicated to light rail extensions, not upkeep, as authorized by Proposition 104.  *See supra* ¶ 2.  Neither Proposition 104 nor the Initiative addresses funding to repair and maintain the existing light rail system.  Therefore, the 100-word description is not misleading by stating that light rail extension funds would be redirected if the Initiative passes.

### CONCLUSION

**¶21**        We affirm the superior court's judgment and the court of appeals' decision.