IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

PROTECT OUR ARIZONA, A POLITICAL COMMITTEE,
*Plaintiff/Appellant,*

*v.*

ADRIAN FONTES, IN HIS CAPACITY AS THE SECRETARY OF STATE OF
ARIZONA,[1]
*Defendant/Appellee,*

*and*

ARIZONANS FED UP WITH FAILING HEALTHCARE (HEALTHCARE RISING AZ),
A POLITICAL COMMITTEE,
*Real Party in Interest/Appellee.*

No. CV-22-0203-AP/EL
**Filed January 17, 2023**

Appeal from the Superior Court in Maricopa County
The Honorable Frank W. Moskowitz, Judge
No. CV2022-009335
**AFFIRMED**

---

[1] The name of Defendant/Appellee has been changed from "Katie Hobbs, in her capacity as the Secretary of State of Arizona" to "Adrian Fontes, in his capacity as the Secretary of State of Arizona" pursuant to Arizona Rule of Civil Appellate Procedure 27(c)(2).

COUNSEL:

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Protect Our Arizona, a Political Committee

Amy Chan, Noah Gabrielsen, Arizona Secretary of State's Office, Phoenix, Attorneys for Adrian Fontes, Secretary of State

James E. Barton II, Jacqueline Mendez Soto, Barton Mendez Soto PLLC, Tempe; and Joshua D. Bendor, Joshua J. Messer, Travis C. Hunt, Osborn Maledon, P.A., Phoenix, Attorneys for Arizonans Fed Up With Failing Healthcare (Healthcare Rising AZ), a Political Committee

Christina Sandefur, Timothy Sandefur, Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute, Phoenix, Attorneys for Amicus Curiae Goldwater Institute

Daniel J. Adelman, Samuel Schnarch, Arizona Center for Law in the Public Interest, Phoenix, Attorneys for Amici Curiae Laura N. Coordes, Professor Christopher G. Bradley, and Professor Kara J. Bruce

Patrick J. Kane, Maurice Wutscher LLP, Solana Beach, California, Attorneys for Amicus Curiae Receivables Management Association International

Roy Herrera, Daniel A. Arellano, Herrera Arellano LLP, Phoenix, Attorneys for Amici Curiae Center for Responsible Lending and Southwest Center for Economic Integrity

Timothy A. La Sota, Timothy A. La Sota, PLC, Phoenix, Attorney for Amicus Curiae Direct Contact, LLC

Dominic E. Draye, Greenberg Traurig, LLP, Phoenix, Attorney for Amici Curiae Governor Doug Ducey, Senate President Karen Fann, and Speaker of the House Russell "Rusty" Bowers

Barney M. Holzman, Bernardo M. Velasco, Mesch Clark Rothschild, Tucson, Attorneys for Amici Curiae Arizona Creditors Bar Association and National Creditors Bar Association

JUSTICE KING authored the Opinion of the Court, in which CHIEF
JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES
BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.

———————————

JUSTICE KING, Opinion of the Court:

**¶1**		Arizona Revised Statutes § 19-102(A) (2014) requires a 100-word
description of the principal provisions of the proposed measure as part of
the petition.[2]   The final statement in the "Predatory Debt Collection
Protection Act" initiative description read: "Does not change existing law
regarding secured debt."   At issue here is whether this single statement
rendered the description objectively false or misleading.   As reflected in
our prior order, we hold the description, when read in its entirety, does not
communicate objectively false or misleading information.

## I.		BACKGROUND

**¶2**		Real Party in Interest Arizonans Fed Up with Failing Healthcare
(Healthcare Rising Arizona) (the "Committee") is the political committee
that sponsored the Predatory Debt Collection Protection Act initiative for
the November 8, 2022 general election ballot.   The Committee prepared
the following 98-word description:

> Caps interest rate on "medical debt," as defined in the Act;
> applies this cap to judgments on medical debt as well as to
> medical debt incurred. Increases the value of assets – a
> homestead, certain household possessions, a motor vehicle,
> funds in a single bank account, and disposable earnings –
> protected from certain legal processes to collect debt.
> Annually adjusts these amended exemptions for inflation
> beginning 2024. Allows courts to further reduce the amount
> of disposable earnings subject to garnishment in some cases
> of extreme economic hardship. Does not affect existing

———————————

[2] The legislature recently increased the word limit to "two hundred
words."   *See* 2021 Ariz. Sess. Laws ch. 345, § 2 (1st Reg. Sess.).   These
statutory amendments became effective after the Committee had filed its
application and obtained its serial number for the initiative.

contracts. Does not change existing law regarding secured debt.

Additionally, pursuant to § 19-102(A), the initiative petition provided the following required notice:

Notice: This is only a description of the proposed measure (or constitutional amendment) prepared by the sponsor of the measure. It may not include every provision contained in the measure. Before signing, make sure the title and text of the measure are attached. You have the right to read or examine the title and text before signing.

In July 2022, the Committee submitted the signatures it had gathered to the Secretary of State. Thereafter, the Secretary of State certified the initiative as Proposition 209 for the general election ballot.

¶3 Protect Our Arizona ("POA") filed a complaint claiming the initiative description was legally insufficient because the final statement— "Does not change existing law regarding secured debt"—was objectively false or misleading. More specifically, the complaint alleged "debt can be secured by a debtor's voluntary pledge of collateral (for example, a purchase money mortgage on real property)," but often "secured debt is created involuntarily—commonly by a judgment lien." Further, "[w]hile the Act generally may not affect existing laws concerning *voluntarily* secured debt, it substantially and pervasively changes existing laws regarding *involuntarily* secured debt," but the final statement "fail[s] to distinguish existing laws regarding *voluntarily* secured debt from laws regarding *involuntarily* secured debt." According to POA, the final statement "conveys objectively false or misleading information because the Act would, in fact, 'change existing law regarding secured debt' by preventing some secured creditors from collecting against certain debtor assets that are subject to levy under current law."

¶4 In evaluating whether the description was objectively false or misleading, the trial court first considered what the term "secured debt" is "commonly understood to mean," citing *Molera v. Hobbs* (*Molera II*), 250 Ariz. 13, 22 ¶ 21 (2020). The court considered whether "secured debt" is commonly understood to mean both voluntarily secured debt (e.g., loans

4

for the purchase of real property or a vehicle where such property is offered as collateral) *and* involuntarily secured debt (e.g., judgment liens). The court explained that POA's objection "only applies if the term 'secured debt' is commonly understood to also mean *involuntarily* secured debt . . . . Thus, to the extent the term 'secured debt' is commonly understood to only mean *voluntarily* secured debt, [the objection] is not well-taken and the summary is not 'objectively false or misleading.'" Citing a dictionary definition of "secured debt," the court concluded "secured debt" is "commonly understood to mean *voluntarily* secured debt." *Secured Debt*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/secured-debt (defining "secured debt" as "a debt or debts that include an agreement for the lender to take particular assets from the borrower if the money is not paid back") (last visited Dec. 21, 2022).

¶5        The court went on to explain, "even *assuming* that the term 'secured debt' is commonly understood to also mean *involuntarily* secured debt, the Court still finds that the summary, when read as [a] whole, is not 'objectively false or misleading.'" The court noted POA's objection that the initiative amends five statutes governing the collection of involuntarily secured debts. But the court explained the description "addresses these changes, including any distinction about the collection of *involuntarily* secured debt," elsewhere in the description "when it says: 'Increases the value of assets—*a homestead, certain household possessions, a motor vehicle, funds in a single bank, and disposable earnings*—protected from *certain legal processes to collect debt* . . . . Allows courts to further reduce the amount of disposable earnings subject to *garnishment* in some cases of extreme hardships.'" Thus, the court concluded "the chosen language would alert a reasonable person to the principal provisions' general objectives," and "that is sufficient." The court denied POA's objection and ordered "that the Act qualifies to appear on the general election ballot."

¶6        This expedited appeal followed. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution. After considering the briefs and authorities filed by the parties and amici, we issued a decision order on August 24, 2022, concluding that "the summary is sufficient and alerted a reasonable person to the principal provisions' general objectives . . . . The summary, when read as a whole, is not objectively false or misleading." We now explain our reasoning in greater detail.

## II.   DISCUSSION

**¶7**        "The only issue before us involves interpretation and application of constitutional and statutory provisions regarding initiatives, which we review de novo."   *Molera v. Reagan* (*Molera I*), 245 Ariz. 291, 294 ¶ 8 (2018).

### A.  The Need for Multiple Circulator Affidavits

**¶8**        In this case, POA claimed that signatures collected by some initiative petition circulators must be disqualified because those circulators failed to strictly comply with A.R.S. § 19-118(B)(5)'s circulator affidavit requirement.   For the reasons explained in *Leibsohn v. Hobbs*, 254 Ariz. 1, 6–9 ¶¶ 18–32 (2022), which addressed the identical issue, we decline to disqualify the signatures on this basis.

### B.  Does the 100-Word Description Communicate Objectively False or Misleading Information?

**¶9**        "The Arizona Constitution reserves to this state's citizens the power to propose and enact laws by initiative."   *Molera I*, 245 Ariz. at 294 ¶ 9 (citing Ariz. Const. art. 4, pt. 1, § 1(1)–(2)).   "Under our constitutional separation of powers, the courts must not intrude upon the people's power to legislate, subject to constitutional and proper statutory requirements." *Id.* (citing *Kromko v. Superior Court,* 168 Ariz. 51, 57–58 (1991)).

**¶10**        The statutory provision at issue here requires "the title and body of [an initiative] petition" to include "a description of no more than one hundred words of the principal provisions of the proposed measure." § 19-102(A) (2014).   The petition must then include the following language:

> Notice: This is only a description of the proposed measure (or constitutional amendment) prepared by the sponsor of the measure. It may not include every provision contained in the measure. Before signing, make sure the title and text of the measure are attached. You have the right to read or examine the title and text before signing.

*Id.*

6

**¶11** "The 100-word description serves as the 'elevator pitch' that alerts prospective signatories to the measure's key operative provisions, enabling them to decide in short order whether to sign the petition, refuse to do so, or make further inquiry about the measure." *Molera II*, 250 Ariz. at 19 ¶ 9. "Section 19-102(A) does not require the description to be impartial." *Id.* ¶ 10 (citing *Save Our Vote, Opposing C-03-2012 v. Bennett*, 231 Ariz. 145, 152 ¶ 28 (2013)). "But to comply, the description must describe the principal provisions to accurately communicate their general objectives." *Id.* We have stated that "[r]easonable people can differ about the *best* way to describe a principal provision, but a court should not enmesh itself in such quarrels." *Id.* at 20 ¶ 11 (citing *Quality Educ. & Jobs Supporting I-16-2012 v. Bennett*, 231 Ariz. 206, 209 ¶ 13 (2013)). "If the chosen language would alert a reasonable person to the principal provisions' general objectives, that is sufficient." *Id.*

**¶12** We recently clarified the standard for determining whether a description is deficient under § 19-102(A) based on the manner in which it describes the initiative's principal provisions. *Id.* at 19–20 ¶¶ 10, 12–13. In *Molera II*, we held "[t]he court should disqualify an initiative from the ballot whenever the 100-word description . . . communicates objectively false or misleading information." *Id.* at 20 ¶ 13 ("[A]lthough sponsors are free to describe the measure in a positive way and emphasize its most popular features, they may not engage in a 'bait and switch' in which the summary attracts signers but misrepresents . . . key provisions."). When a court is faced with such a challenge, it "should 'consider the meaning a reasonable person would ascribe to the description.'" *Id.* (quoting *Ariz. Chapter of the Associated Gen. Contractors v. City of Phx. (AGCA)*, 247 Ariz. 45, 48 ¶ 15 (2019)).[3]

**¶13** POA contends the final statement of the description—"Does not change existing law regarding secured debt"—is objectively false and misleading. According to POA, both non-legal resources and legal authorities recognize the term "secured debt" to mean both voluntarily and

---

[3] A measure will also be disqualified from the ballot if "the sponsor omitted a 'principal provision' of the measure from the description." *Molera II*, 250 Ariz. at 19 ¶ 8. Here, POA did not allege the description improperly omitted a principal provision of the initiative.

involuntarily secured debt. POA claims the initiative "directly and materially amends no fewer than five statutes directly governing the rights of involuntarily secured creditors" (citing A.R.S. §§ 33-1101, -1123, -1125, -1126, -1131), and therefore the last sentence communicates "objectively false or misleading information."[4]

¶14 The parties and amici have cited numerous authorities—statutes, case law, Uniform Commercial Code provisions, dictionaries, and publicly available materials—which they claim support their respective positions regarding the common understanding of the term "secured debt." POA and supporting amici claim their authorities demonstrate an understanding of "secured debt" as consisting of both voluntarily and involuntarily secured debt. The Committee and supporting amici, conversely, claim their authorities illustrate that "secured debt" is commonly understood to mean voluntarily secured debt.

¶15 Here, however, we need not determine what the term "secured debt" is "commonly understood to mean." *See Molera II*, 250 Ariz. at 22 ¶ 21. This is because, even if "secured debt" is commonly understood to include both involuntarily and voluntarily secured debt, the description's final statement must be "[r]ead in context" with all preceding sentences in the description to determine what "a reasonable person would know." *See AGCA*, 247 Ariz. at 49 ¶ 17.

¶16 On this point, our recent decision in *AGCA* is instructive. In that case, the initiative description stated, in relevant part: "This initiative measure amends the City Charter to terminate construction of all future light rail extensions and redirect the funds toward infrastructure improvements. Revenues from terminating light rail extensions . . . will fund" various "infrastructure improvements." 247 Ariz. at 48–49 ¶ 16. The plaintiffs argued the description was misleading because, among other things, "the description's references to 'revenues' falsely suggest[ed] that

---

[4] Several amici raised issues that were not raised by the parties. "Because '[a]micus curiae will not be permitted to create, extend, or enlarge the issues' on appeal, we need not resolve" these issues that the parties did not present for review. *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 493 ¶ 46 (2022) (alteration in original) (quoting *City of Phoenix v. Phx. Civic Auditorium & Convention Ctr. Ass'n*, 99 Ariz. 270, 274 (1965)).

terminating light rail extensions would generate income."   *Id.* at 49 ¶ 17. But we concluded the language was not misleading because the description's "first sentence speaks of 'redirect[ing]' existing funds from future light rail extension projects.   Read in context, a reasonable person would know that the 'revenues' mentioned in the succeeding sentences refer to the redirected funds."   *Id.* (alteration in original).

¶17      Likewise, in evaluating POA's claim that the description's final statement communicated objectively false or misleading information, we must read the final statement "in context" with the entire description and in conjunction with all preceding sentences to determine what "a reasonable person would know."   *See id.*

¶18      The description's text explicitly states the initiative "[i]ncreases the value of assets—a homestead, certain household possessions, a motor vehicle, funds in a single bank, and disposable earnings—protected from certain legal processes to collect debt.   Annually adjusts these amended exemptions for inflation beginning 2024."   This language "would alert a reasonable person to the principal provisions' general objectives," *Molera II,* 250 Ariz. at 20 ¶ 11—that the Predatory Debt Collection Protection Act will change the law to increase the values of certain categories of property statutorily exempt from execution by legal process.   This language "would alert a reasonable person," *id.*, that the initiative changes existing laws governing the rights of judgment creditors seeking "to collect debt" on these specified assets.

¶19      When the final statement—"[d]oes not change existing law regarding secured debt"—is "[r]ead in context" with the entire description, we conclude "a reasonable person would know" that the initiative will increase the value of certain property exempt from execution through legal process, thereby limiting assets available to judgment creditors, but changes do not extend beyond those in the description and debts secured through voluntary financing arrangements are unaffected.   *See AGCA,* 247 Ariz. at 49 ¶ 17; *see also Molera II,* 250 Ariz. at 20 ¶ 13 ("In addressing challenges, a court should 'consider the meaning a reasonable person would ascribe to the description.'" (quoting *AGCA,* 247 Ariz. at 48 ¶ 15)).

¶20      The reference to "secured debt," in context, clarifies that—just as the initiative "[d]oes not affect existing contracts" regarding debt, which are

themselves voluntarily entered into—the initiative does not affect the law regarding how secured transactions are voluntarily attached, perfected, and enforced. Indeed, the description explains the initiative amends certain exemptions; and as recognized in the exemption statutes, these exemptions apply only in the context of involuntarily imposed liens and do not apply to collection of debt secured through voluntary financing arrangements. *See* A.R.S. § 33-1103(A)(1) ("Real property that is subject to the homestead exemption" under § 33-1101(A) "is exempt from involuntary sale under a judgment or lien, *except in connection with [a] consensual lien, including a mortgage or deed of trust, or contract of conveyance.*" (emphasis added)); A.R.S. § 33-1122 ("The property declared exempt by this article," which includes certain household possessions (§ 33-1123), a motor vehicle (§ 33-1125(8)), funds in a single bank account (§ 33-1126(9)), and disposable earnings (§ 33-1131(B)), "*is not exempt from process utilized to enforce a security interest in or pledge of such property.*" (emphasis added)). These exemption statutes list property and values that are exempt from legal process but exclude financing arrangements involving agreements to offer as security a consensual lien or pledge of collateral. Further, the description notes the initiative affects "processes to collect debt" in the context of these exemptions that apply only to involuntarily imposed liens.

**¶21** Therefore, even if a reader were to understand "secured debt" as generally including both voluntarily and involuntarily secured debt, "a reasonable person would know"—by reading the entire description—that the measure intended to change existing laws governing the rights of judgment creditors by increasing the value of assets exempt from execution, but the initiative does not make changes beyond those in the description and does not change existing law regarding debt secured by a consensual lien or pledge. *See AGCA*, 247 Ariz. at 49 ¶ 17; *see also Molera II*, 250 Ariz. at 20 ¶ 13 (discussing "the meaning a reasonable person would ascribe to the description").

**¶22** We have stated that "[r]easonable people can differ about the *best* way to describe a principal provision, but a court should not enmesh itself in such quarrels." *Molera II*, 250 Ariz. at 20 ¶ 11. Here, we conclude the description, when read in its entirety, "alert[ed] a reasonable person to the principal provisions' general objectives" and was not "objectively false or misleading." *Id.* ¶¶ 11, 13.

### C. Attorney Fees

**¶23**　　Both parties here request an award of attorney fees pursuant to A.R.S. § 19-118(F) ("The prevailing party in an action to challenge the registration of a circulator under this section is entitled to reasonable attorney fees.").　In declining each party's request for attorney fees in *Leibsohn,* we stated that "neither party prevailed entirely in their arguments concerning the Committee's compliance with § 19-118(B)."　254 Ariz. at 9 ¶ 33.　Here, as well, "[o]ur refusal to disqualify signatures for the Committee's failure to comply with § 19-118(B)(5) was based on the Secretary [of State's] acts rather than the Committee's legal arguments." *Id.*　We adopt the same reasoning in this case and decline each party's request for attorney fees under § 19-118(F).

## III.　CONCLUSION

**¶24**　　For the foregoing reasons, we affirm the judgment of the trial court and decline to award attorney fees to either party.