SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| JAMES McLAUGHLIN; UNITED FOOD & COMMERCIAL WORKERS LOCAL 99, | ) Arizona Supreme Court<br>) No. CV-10-0205-AP/EL<br>) |
| Plaintiffs/Appellees, | ) Maricopa County<br>) Superior Court |
| v. | ) No. CV2010-014942<br>) |
| KEN BENNETT, in his official capacity as Secretary of State for the State of Arizona; LEGISLATURE OF THE STATE OF ARIZONA; BOARD OF SUPERVISORS OF MARICOPA COUNTY, in its official capacity and on behalf of all counties in the State, | )<br>)<br>) **O P I N I O N**<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants/Appellants, | )<br>) |
| and | )<br>) |
| S.O.S. BALLOT - IN SUPPORT OF SCR 1026 COMMITTEE (ID 201000023); and ARIZONA CHAMBER OF COMMERCE & INDUSTRY, | )<br>)<br>)<br>) |
| Defendants-Intervenors. | )<br>) |

Appeal from the Superior Court in Maricopa County
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**
_____


DAVIS, COWELL & BOWE, LLP                     San Francisco, CA
     By   Andrew J. Kahn
          Elizabeth A. Lawrence

and

SNOW & CARPIO, P.L.C.                                        Phoenix
    By   X. Alex Carpio
Attorneys for James McLaughlin and United Food & Drug Commercial
Workers Local 99 AFL-CIO

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                      Phoenix
    By   Barbara A. Bailey, Assistant Attorney General
         Carrie Jane Brennan, Assistant Attorney General
Attorneys for Ken Bennett

ARIZONA STATE LEGISLATURE                                    Phoenix
    By   Gregrey G. Jernigan
    By   Peter A. Gentala
Attorneys for Arizona State Legislature

SCHARF-NORTON CENTER FOR CONSTITUTIONAL                      Phoenix
LITIGATION AT THE GOLDWATER INSTITUTE
    By   Clint Bolick
         Gustavo E. Schneider
         Carrie Ann Sitren
Attorneys for S.O.S. Ballot and Arizona Chamber of Commerce and
Industry
_____

**P E L A N D E R**, Justice

¶1      The question presented is whether Proposition 108, a constitutional amendment referred to the people by the legislature, complies with the separate amendment rule of Article 21, Section 1 of the Arizona Constitution.  The superior court concluded that Proposition 108 violates that rule.  On August 3, 2010, we entered an order affirming the court's judgment.  This opinion explains our reasoning.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2      Senate Concurrent Resolution ("SCR") 1026 was introduced in early 2009, approved by both chambers of the legislature, and transmitted in July 2009 to the Secretary of

2

State for placement on the November 2010 general election ballot. This resolution, designated as Proposition 108, states:

> To preserve and protect the fundamental right of individuals to vote by secret ballot, where local, state or federal law requires elections for public offices or for ballot measures, or requires designations or authorizations for employee representation, the right of individuals to vote by secret ballot shall be guaranteed.

The proposition, if passed, would add a new section 36 to Article 2 of the Arizona Constitution, entitled "Right to Secret Ballot."

¶3       In May 2010, appellees (collectively, "McLaughlin") filed a special action, alleging Proposition 108 violates Article 21, Section 1. After a hearing, the superior court rejected the laches defense asserted by appellants S.O.S. Ballot, Arizona Chamber of Commerce & Industry, and the Arizona Legislature (collectively, "S.O.S. Ballot"), and ruled that the provisions in Proposition 108 are not sufficiently interrelated to constitute a single amendment. Accordingly, the court enjoined the proposition's placement on the upcoming ballot.

## DISCUSSION

¶4       S.O.S. Ballot argues that the equitable doctrine of laches bars McLaughlin's challenge and that Proposition 108 complies with the separate amendment rule. We have jurisdiction over this direct appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 19-122(C) (Supp. 2009) and Arizona Rule of

3

Civil Appellate Procedure 8.1(h).

## I.  Laches

¶5      "In election matters, time is of the essence because disputes concerning election and petition issues must be initiated and resolved, allowing time for the preparation and printing of [publicity pamphlets and] absentee voting ballots." *Harris v. Purcell*, 193 Ariz. 409, 412 ¶ 15, 973 P.2d 1166, 1169 (1998).  "[T]he laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice." *Lubin v. Thomas*, 213 Ariz. 496, 497 ¶ 10, 144 P.3d 510, 511 (2006).  We review a trial court's decision on laches for abuse of discretion.  *See Korte v. Bayless*, 199 Ariz. 173, 174 ¶ 3, 16 P.3d 200, 201 (2001).

¶6      Although McLauglin filed this action ten months after Proposition 108 was sent to the Secretary of State, "[d]elay alone will not establish a laches defense."  *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558 ¶ 6, 201 P.3d 517, 519 (2009).  Even if we assume the delay was unreasonable, S.O.S. Ballot has not established prejudice.  McLaughlin filed this action almost sixteen weeks before the printing deadline for the Secretary of State's publicity pamphlet and, therefore, did not "deprive judges of the ability to fairly and reasonably process and consider the issues."  *Mathieu v. Mahoney*, 174 Ariz.

4

456, 461, 851 P.2d 81, 86 (1993); *see Korte*, 199 Ariz. at 174-75 ¶ 3, 16 P.3d at 201-02 (rejecting laches defense when proposition challenge was filed almost eight weeks before the deadline for mailing the publicity pamphlet, "allow[ing] sufficient time to render a decision"). S.O.S. Ballot's claim of harm from the delayed filing is also undermined by its request for an extended briefing schedule in superior court. Because S.O.S. Ballot failed to show prejudice, and because McLaughlin's challenge raised substantial questions about Proposition 108's constitutionality, the court did not abuse its discretion in refusing to apply laches to bar the claim.[1]

## II. Separate Amendment Rule

¶7 The Arizona Constitution requires that "[i]f more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such manner that the

---

[1] S.O.S. Ballot argues that had the complaint been filed earlier and the proposition invalidated, the legislature could have modified Proposition 108. *See League of Ariz. Cities & Towns*, 219 Ariz. at 559 ¶ 10, 201 P.3d at 520. But S.O.S. Ballot suffered no prejudice from the delay. That proponents of a constitutional amendment may have limited time to correct a violation of the separate amendment rule is not itself a ground to find laches. Moreover, in response to our ruling, the governor convened a special session on August 9 to consider this issue, Governor's Proclamation of August 5, 2010, culminating in a new proposition that appears to contain a single amendment, *see* SCR 1001, 49th Leg., 9th Spec. Sess. (2010) ("The right to vote by secret ballot for employee representation is fundamental and shall be guaranteed where local, state or federal law permits or requires elections, designations or authorizations for employee representation.").

electors may vote for or against such proposed amendments separately." Ariz. Const. art. 21, § 1. "The clear import of this provision is that voters must be allowed to express their separate opinion as to each proposed constitutional amendment." *Clean Elections Inst., Inc. v. Brewer*, 209 Ariz. 241, 244 ¶ 7, 99 P.3d 570, 573 (2004); *see Kerby v. Luhrs*, 44 Ariz. 208, 214, 36 P.2d 549, 551 (1934) (recognizing the separate amendment rule was "intended to prevent the pernicious practice of 'log-rolling' in the submission of a constitutional amendment"). We review de novo whether a proposition complies with the separate amendment rule. *See Ariz. Together v. Brewer*, 214 Ariz. 118, 120 ¶ 2, 149 P.3d 742, 744 (2007).

¶8     In a separate amendment challenge, we examine whether provisions of a proposed amendment "are sufficiently related to a common purpose or principle that the proposal can be said to 'constitute a consistent and workable whole on the general topic embraced,' that, 'logically speaking, . . . should stand or fall as a whole.'" *Korte*, 199 Ariz. at 176-77 ¶ 10, 16 P.3d at 203-04 (quoting *Kerby*, 44 Ariz. at 221, 36 P.2d at 554). This test requires us to analyze (1) whether a proposition's provisions are "*topically related*," and (2) whether they are "*sufficiently interrelated* so as to form a consistent and workable proposition." *Ariz. Together*, 214 Ariz. at 121 ¶ 6, 149 P.3d at 745 (internal citation and quotation marks omitted). A

proposition's provisions, therefore, must "exhibit both topicality and interrelatedness" to comply with the separate amendment rule. *Id.*

¶9    Like the proposed amendment in *Arizona Together*, Proposition 108 "can be divided into two provisions." *Id.* at 121 ¶ 7, 149 P.3d at 745. The first provision guarantees the right to vote by secret ballot in public elections; the second establishes an individual right to a secret ballot election to determine union representation. Both provisions pertain to secret ballots and thus arguably are topically related, a point McLaughlin does not seriously contest.

¶10    Even if we assume the provisions of Proposition 108 meet the topicality requirement, however, they must also be sufficiently interrelated to comply with the separate amendment rule. To assess whether the provisions are sufficiently interrelated, we consider the following factors:

> whether various provisions are facially related, whether all the matters addressed by [the proposition] concern a single section of the constitution, whether the voters or the legislature historically has treated the matters addressed as one subject, and whether the various provisions are qualitatively similar in their effect on either procedural or substantive law.

*Id.* at 122 ¶ 10, 149 P.2d at 746 (quoting *Korte*, 199 Ariz. at 177 ¶ 11, 16 P.3d at 204).[2]

---

[2]    *Arizona Together* recognized that these factors are not exclusive and may not all apply in a particular case, but they

7

¶11     S.O.S. Ballot contends Proposition 108's provisions are facially related because both public elections and union representation elections are "government-administered and/or supervised." As S.O.S. Ballot observes, secret ballots may be used in both contexts to protect individual voters from coercion. But this common purpose primarily pertains to the topicality requirement and does not establish a relationship between public elections and union representation.

¶12     Relying heavily on *Arizona Together*, S.O.S. Ballot attempts to analogize the "marriage" proposition in that case to Proposition 108. We are not persuaded. The two provisions involved in *Arizona Together* both concerned marriage and were intended "to preserve and protect" that institution. 214 Ariz. at 122 ¶ 11, 149 P.3d at 746. The provisions there were facially related because the first adopted a definition of marriage that the second made exclusive in terms of legal status. Although S.O.S. Ballot argues that Proposition 108's two provisions establish a fundamental right to a "secret ballot" for public elections and union representation, those contexts are quite different and wholly unrelated. The type of "facial relatedness" S.O.S. Ballot urges would reduce that

---

can provide guidance for the Court in assessing whether provisions are sufficiently interrelated. *See* 214 Ariz. at 122-23 ¶¶ 10-17, 149 P.3d at 746-47.

component of the "interrelatedness" test to a mere repetition of the topicality requirement.  Contrary to S.O.S. Ballot's contention, significant "differences between the two contexts" are pertinent to the inquiry on interrelatedness, even though "complete overlap" of a proposition's provisions is not required.

¶13     Proposition 108 also does not "concern a single section of the constitution."  *Ariz. Together*, 214 Ariz. at 122 ¶ 10, 149 P.3d at 746 (quotation omitted).  Secrecy of voting in public elections is already protected in Article 7, Section 1 of the Arizona Constitution, which since statehood has provided: "All elections by the people shall be by ballot, or by such other method as may be prescribed by law; [p]rovided, that secrecy in voting shall be preserved."  If approved, Proposition 108 would be added as a new section in Article 2, resulting in two separate but partly overlapping constitutional provisions that both ensure secrecy in public elections.

¶14     As S.O.S Ballot acknowledges, public elections and labor representation historically have not been linked together in Arizona law.  The Arizona Constitution addresses public elections in Article 7, labor in Article 18, and the right to work in Article 25.  In addition, public elections are primarily governed by state law, *see* A.R.S. Title 16 (elections and electors), Title 19 (initiative, referendum, and recall), while

9

union elections are generally regulated by federal law, *see* National Labor Relations Act, 29 U.S.C. §§ 151-69 (2006). Although S.O.S. Ballot cites federal case law in an attempt to link public elections and union representation, we will not focus in a separate amendment challenge on the historical treatment of such matters by the federal courts. *Cf. Ariz. Together*, 214 Ariz. at 123 ¶ 14, 149 P.3d at 747 (declining to consider the law of other states).

¶15      Moreover, the provisions in Proposition 108 are not "qualitatively similar in their effect" on Arizona law. *Id.* at 122 ¶ 10, 149 P.3d at 746 (quotation omitted). Proposition 108 would substantively amend the Arizona Constitution in two distinct ways. First, the proposition would create a new right to vote exclusively by secret ballot for "designations or authorizations for employee representation," clearly the driving motive for its proponents. *See* Senate Fact Sheet for SCR 1026, 49th Leg., 1st Reg. Sess. (2009) (discussing the proposed change in federal labor law as the background for the resolution).

¶16      Second, Proposition 108 would not only affirm the existing right to secrecy in public elections, but would also amend Article 7, Section 1 by requiring the use of ballots in public elections. Such an amendment would preclude the legislature from adopting, pursuant to Article 7, Section 1, "other [voting] method[s]" it might otherwise choose to

10

"prescribe[] by law," provided secrecy is preserved. *See People ex rel. Deister v. Wintermute*, 86 N.E. 818, 819 (N.Y. 1909) (stating that New York's constitutional provision, substantially identical to Article 7, Section 1, was included "to enable the substitution of voting machines, if found practicable"); *see also The Records of the Arizona Constitutional Convention of 1910*, at 559-60 (John S. Goff ed., 1990) (documenting that Arizona's framers similarly fashioned Article 7, Section 1 to preserve the state's ability to adopt voting machines).

¶17    Proposition 108 is distinguishable from other propositions we have found constitutional because the provisions here do not constitute a comprehensive approach to a general topic, *see Korte*, 199 Ariz. at 178 ¶ 15, 16 P.3d at 205, or a "unified pronouncement" on a constitutional definition, *Ariz. Together*, 214 Ariz. at 123 ¶ 17, 149 P.3d at 747. In contrast to the marriage proposition in *Arizona Together*, the provisions in Proposition 108 do not "clearly share a logical relationship" or "derive meaning and effect from the mandates contained in the other provision." *Id.; see id.* at 128 ¶ 41, 149 P.3d at 752 (Hurwitz, J., concurring) (stating that interrelatedness requires "a reasonable or logical relationship of the various provisions *with each other*, and not simply with the broader topic that they cover"); *see also Slayton v. Shumway*, 166 Ariz. 87, 92, 800 P.2d 590, 595 (1990) (finding the provisions of a

11

victims' rights initiative, as interpreted by this Court, were "a consistent and workable whole on the general topic of victims' rights and protections" (citation and internal quotation marks omitted)).

¶18     Proposition 108's provisions are not sufficiently interrelated to satisfy the separate amendment rule.  Therefore, we hold that Proposition 108 violates Article 21, Section 1 of the Arizona Constitution.[3]

**CONCLUSION**

¶19     For the reasons set forth above, the judgment of the superior court is affirmed.


_____
        A. John Pelander, Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice

_____

[3]     In Colorado and Nevada, similar initiatives were found to violate the state's single subject rule.  Colorado Secretary of State, Proposed Initiative #15, available at http://www.elections .colorado.gov/Content/Documents/Initiatives/Title%20Board%20Filin gs/2009-2010_Filings/Filings/Final.15.pdf (last visited Aug. 20, 2010); Colorado Initiative Title Setting Board, Proposed Initiative #15 Results, available at http://www.elections.colo-rado.gov/Content/Documents/Initiatives/Title%20Board%20Filings/20 09-2010_Filings/Results/results_15.pdf (last visited Aug. 20, 2010); *Nev. State AFL-CIO v. SOS Ballot Nev.*, No. 09-OC-00562 1B (Nev. 1st Dist. Feb. 25, 2010) (unpublished order).  *Cf. In re Title, Ballot Title, and Submission Clause for 2009-2010 #24*, 218 P.3d 350, 352 (Colo. 2009) (finding other initiatives securing the right to secret ballots in employee representation elections only did not violate the state's single subject requirement).

_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice


_____
Michael D. Ryan, Justice (Retired)


**H U R W I T Z**, Vice Chief Justice, concurring

¶20       In *Arizona Together v. Brewer*, this Court "clear[ed] out a considerable amount of our jurisprudential underbrush" concerning Article 21, Section 1.  214 Ariz. 118, 127 ¶ 31, 149 P.3d 742, 751 (2007) (Hurwitz, J., concurring).  Today's opinion faithfully applies *Arizona Together*.  I write separately because, as in *Arizona Together*, I am concerned with the Court's focus on four specific "objective factors" in determining whether a proposed amendment violates Article 21, Section 1.  *See id*. at 129 ¶ 43, 149 P.3d at 753.

### I.

¶21       Because most proposed constitutional amendments will involve one general topic, the critical question in separate amendment cases is typically whether the proposed amendment's various provisions also are logically interrelated.  *Id.* at 127-

13

28 ¶¶ 33–36, 149 P.3d at 751–52.  Proposition 108's proponents urge that it meets this test because its provisions all relate to voting by secret ballot.  But, as the Court notes today, *see* ¶ 11 *supra*, although this may suffice to establish topicality, it does not demonstrate interrelatedness.  Were such the case, a constitutional amendment affirming the use of secret ballots in public elections and requiring this Court to elect the Chief Justice in the same way would qualify as a single amendment.

¶22     Interrelatedness requires something more, a logical relationship of the various provisions *with each other*, so that they "constitute a consistent and workable whole on the general topic" and "logically speaking, they should stand or fall as a whole."  *Kerby v. Luhrs*, 44 Ariz. 208, 221, 36 P.2d 549, 554 (1934).  Proposition 108 fails that test.

¶23     Proposition 108, as the Court notes, has two independent provisions.  The first affirms the guarantee of secrecy in public elections already contained in Article 7, Section 1, albeit without mentioning that such a guarantee already exists.  Perhaps inadvertently, this same provision also seemingly abrogates the legislature's existing power under Article 7, Section 1 to authorize secret elections through mechanisms other than ballots, such as voting machines.  The second provision in Proposition 108 creates an entirely new

14

constitutional right to vote by secret ballot in union representation designations or authorizations.

¶24    The provision relating to public elections simply has no effect on the one relating to union designations. The efficacy of the provision relating to unions is neither enhanced nor diminished by the provision relating to public elections. Nor is Proposition 108 an integrated solution to a perceived problem. This stands in stark contrast to *Arizona Together*, in which one provision defined marriage and the other provision made that definition exclusive in terms of legal status. *Arizona Together*, 214 Ariz. at 123 ¶ 17, 149 P.3d at 747. That amendment connected its provisions as a logical whole. Here, the whole is nothing more than the bare sum of its unrelated parts. Neither part operates in tandem with the other, *see id.* at 122 ¶ 12, 149 P.3d at 746, nor is there any logical reason why the amendment should "stand or fall as a whole," *Kerby*, 44 Ariz. at 221, 36 P.2d at 554. Proposition 108 thus clearly falls afoul of Article 21, Section 1, as the Court today concludes.

¶25    Once we have concluded that there is no logical relationship between the two provisions in Proposition 108, "[t]hat conclusion should end the analysis." *Arizona Together*, 214 Ariz. at 128 ¶ 39, 149 P.3d at 752 (Hurwitz, J., concurring). The four *Arizona Together* factors may sometimes confirm that conclusion, but they should not drive it.

15

¶26     Moreover, I am concerned that the Court's focus on the four factors potentially adds unnecessary uncertainty to our separate amendment analysis.  *Arizona Together*'s first prong, "facial relatedness," originated in *Kerby*, in which we noted that the proposed amendment had "at least three distinct propositions . . . no two of which are necessarily required for a proper operation of the third.  On their face they have no direct relation *to each other*."  *Kerby*, 44 Ariz. at 221-222, 36 P.2d at 554.  "Facial relatedness" thus seems to me to be not one of four separate factors to be used in evaluating whether a proposition involves a single amendment, but rather the ultimate question to be decided.  Put differently, "facial relatedness" is merely another way of stating that the various provisions "constitute a consistent and workable whole on the general topic." *See id.* at 221, 36 P.2d at 554.

¶27     The Court today concludes that Proposition 108 fails the second prong in *Arizona Together*, as it does not involve the same portion of the Constitution in which the right to secrecy in public elections is treated, Article 7.  This, however, is largely a matter of drafting and fortuity – Proposition 108 would seem to me to violate the separate amendment rule every bit as much if its proponents had suggested amending Article 7 instead of Article 2.

**¶28**     Similarly, the third *Arizona Together* inquiry – whether the proposition's various topics have been considered together historically - is of less than compelling force.  Our Constitution and statutes have not dealt with how workers make union representation decisions, presumably because that topic is, as the Court notes in ¶ 14, the province of federal law.  Although the fact that topics have been treated together historically provides some evidence of logical interrelatedness, the converse is not necessarily true.  When a proposed amendment tries to analogize an existing constitutional right (in this case, the right to secrecy in public elections) to a proposed new right, the new right will almost never have been previously considered together with the old one.

**¶29**     The last *Arizona Together* factor, whether the various provisions are "qualitatively similar in their effect on the law," 214 Ariz. at 123 ¶ 16, 149 P.3d at 747, also strikes me as being of questionable practical application in most cases, at least in its original formulation.  As the Court noted in *Arizona Together*, *id.*, the "qualitatively similar" factor came from *Slayton v. Shumway*, 166 Ariz. 87, 800 P.2d 590 (1990).  In *Slayton*, the Court emphasized that the various provisions of a proposed amendment relating to victims' rights were similar because they were all procedural in nature.  *See id.* at 91-92, 800 P.2d at 594-95.  Here, the provisions of Proposition 108 are

17

clearly both substantive and hence would easily pass through the *Slayton* screen.

**¶30**    As it did in *Arizona Together*, 214 Ariz. at 123 ¶ 17, 149 P.3d at 747, the Court today interprets the "qualitatively similar" factor in a somewhat broader fashion than in *Slayton*, accurately concluding that although both provisions of Proposition 108 are substantive in nature, *see* ¶¶ 15-16 *supra*, they have very different – and unrelated - effects.  But to me this is simply another way of stating that these provisions neither are logically related to each other nor constitute a single constitutional amendment.

**¶31**    As noted above, I do not suggest that the factors set forth in *Arizona Together* are not useful in an Article 21, Section 1 analysis.  But I worry about our recent focus on these factors, some of which may be manipulated by shrewd drafters. The four *Arizona Together* factors should not obscure – or substitute for analysis of - the real question, which is whether the various provisions of the proposed amendment, in addition to concerning the same general topic, are also "all logically related to each other" and form an integrated proposition deserving a single up or down vote from the people.  *See Tilson v. Mofford*, 153 Ariz. 468, 472, 737 P.2d 1367, 1371 (1987).

18

**II.**

¶**32**      I add a final word.  The separate amendment provision in Article 21, Section 1 was "intended to prevent the pernicious practice of 'logrolling' in the submission of a constitutional amendment."  *Kerby*, 44 Ariz. at 214, 36 P.2d at 551.  The danger of logrolling is heightened when one provision of an amendment is *already in* the Constitution.  What is most troublesome about Proposition 108 is that the Constitution has always protected secrecy in voting in public elections.  But as worded, Proposition 108 suggests that a "no" vote, in addition to rejecting the mandate for secret ballots in union representation decisions, would also jeopardize the existing constitutional guarantee of secrecy in public election voting.  This strikes me as precisely the sort of logrolling that Article 21, Section 7 was designed to avoid*.*

_____
                    Andrew D. Hurwitz, Vice Chief Justice

19