NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SUNBURST FARMS EAST, INC., *Plaintiff/Appellee*,

*v.*

KENNETH BRADEN, et al., *Defendants/Appellants*,

EDMUND T. LISI, et al., *Intervenors/Appellees*.

No. 1 CA-CV 19-0144
FILED 4-23-2020

Appeal from the Superior Court in Maricopa County
Nos.  CV0000-488397
CV2008-000489
CV2008-007832
(Consolidated)
The Honorable Hugh E. Hegyi, Judge *Retired*

**VACATED AND REMANDED**

COUNSEL

Iannitelli Marcolini PC, Phoenix
By Claudio E. Iannitelli, Jason K. Thomas
*Co-Counsel for Appellants Braden*

McKeddie Cooley GP, Scottsdale
By Melanie C. McKeddie, Justin R. Cooley
*Co-Counsel for Appellants Braden and Counsel for Ascani*

James L. Sullivan PC, Scottsdale
By James L. Sullivan
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Several property owners appeal from a declaratory judgment in favor of the Sunburst Farms East, Inc. homeowners' association ("Sunburst"). For the following reasons, we vacate the judgment and remand for further proceedings consistent with this decision.

## BACKGROUND

¶2        Sunburst Farms East is a residential community consisting of individual lots in four sections ("Section" Nos. 2, 3, 4 and 7). By build-out completion, each Section had its own deed restrictions, embodied in a Declaration of Covenants, Conditions and Restrictions ("original CC&Rs"). While the Sections' original CC&Rs were distinct, each governing document contained a provision whereby every property owner "automatically became a member" of the Sunburst Farms East Mutual Water & Agricultural Company homeowners' association ("SFEM")— Sunburst's predecessor in interest. As stated in each of the original CC&Rs, SFEM was created to provide irrigation water and agricultural tillage services to its members. To fund these services, the original CC&Rs authorized SFEM to impose assessments on its members, including those members that did not use the provided services, and to impose liens upon delinquent members' lots.

¶3        When the developer relinquished control of Sunburst Farms East, a majority of the property owners from Section Nos. 3 and 4 voted to amend their original CC&Rs to revoke all mandatory payment obligations and SFEM's authority to impose liens ("first amended CC&Rs"). A majority of the property owners from Section No. 7 likewise voted to amend their original CC&Rs to revoke those restrictions, as well as the provision imposing automatic membership in the association ("first amended

CC&Rs"). Each Section retained, however, a modification clause allowing for amendment by majority vote.

**¶4** Notwithstanding the approved amendments, SFEM subsequently placed liens upon the lots of property owners from Section Nos. 3, 4 and 7 who did not pay association dues and assessments. In an ensuing quiet title action to remove those liens, our supreme court determined that the property owners of Section Nos. 3, 4 and 7 had "effectively revoked" their original CC&Rs and were therefore "legally released from the obligation of paying assessments and charges" to the association. *See Duffy v. Sunburst Farms E. Mut. Water & Agric. Co., Inc.*, 124 Ariz. 413, 417 (1979).

**¶5** Despite this ruling, disputes and litigation regarding the scope and application of the Sections' CC&Rs continued for more than 40 years. While the history of this litigation is complex, the facts relevant to this appeal are comparatively straightforward.

**¶6** In October 2007, Sunburst's Board of Directors ("the Board") held a meeting at which they presented attending property owners with an overview of proposed, uniform CC&Rs for the entire community ("the 2007 CC&Rs"). Both before and after that meeting, the Board sent election materials to the property owners in each Section, explaining that the 2007 CC&Rs would unify the four Sections under a single governing document.

**¶7** Consistent with the Board's representations, the 2007 CC&Rs are captioned as the amended and restated CC&Rs for "Sunburst Farms East Two, Three, Four and Seven." In its preamble, the 2007 CC&Rs state that the majority of owners "in each of Sunburst Farms Two, Three, Four and Seven desire to amend" their CC&Rs and therefore all previously recorded CC&Rs "for Sunburst Farms East Two, Three, Four and Seven" are "superseded in their entirety." The enumerated amendments include, among other things: (1) granting optional association membership; (2) requiring monthly assessments from all property owners, irrespective of membership; and (3) extending the association authority to impose liens on lots owned by delinquent property owners.

**¶8** After an election on the proposed amendments, Sunburst recorded the 2007 CC&Rs, which were purportedly approved by a majority of property owners in each Section. By their express terms, the 2007 CC&Rs supersede any prior litigation and settlements.

¶9 On the heels of the 2007 CC&Rs' recording, some property owners ("the Homeowners")[1] filed a lawsuit seeking to enforce a prior settlement agreement. Sunburst, in turn, filed a separate lawsuit seeking a declaratory judgment to determine that the 2007 CC&Rs are valid. Although the superior court consolidated the matters, the issues were bifurcated, and this court ultimately concluded that the prior settlement agreement, which was not approved by a majority of the property owners, constituted an invalid amendment to the Sections' CC&Rs. *Halt v. Sunburst Farms, Inc.*, 1 CA-CV 12-0376, 2014 WL 173639, 5–6, ¶¶ 26–29 (App. Jan. 16, 2014) (mem. decision).

¶10 With only the question of the validity of the 2007 CC&Rs remaining, Sunburst moved for summary judgment, contending a majority of the property owners from each Section had approved the 2007 CC&Rs. In response, the Homeowners argued that: (1) Sunburst had misled the voters, (2) the ballot was legally insufficient, and (3) the Sections' CC&Rs could be amended only by unanimous consent. The Homeowners also cross-moved for summary judgment based on a lack of unanimous consent. Denying the Homeowners' motion, the superior court found that a majority vote could amend the Sections' CC&Rs and unanimous consent was not required.

¶11 Following that ruling, the Homeowners discovered that the 2007 CC&Rs were not, in fact, approved by a majority of the property owners in Section No. 7. In light of this discovery, the parties stipulated that the 2007 CC&Rs are invalid as to Section No. 7, and the Homeowners refined their argument, asserting that the 2007 CC&Rs are wholly invalid because a majority of the property owners from each Section did not approve them. Rejecting the Homeowners' contention, the superior court concluded that "uniformity was a desired goal, but not a necessary one." Consistent with the parties' stipulation, the court found the 2007 CC&Rs valid only as to Section Nos. 2, 3 and 4 and granted Sunburst's motion for summary judgment accordingly. Over the Homeowners' objection, the court found that Sunburst was the only prevailing party and awarded it

---

[1] Although several of the appellants joined this litigation separately, to the extent they are similarly situated with respect to the issues raised on appeal, we refer to them collectively. It is undisputed that the appellants from Section Nos. 3 and 4 purchased their property after the original CC&Rs for Section Nos. 3 and 4 were amended.

$300,000 in attorney fees as part of a declaratory judgment. The Homeowners timely appealed.

**DISCUSSION**

**¶12** The Homeowners challenge the underlying merits of the declaratory judgment, contending the superior court improperly entered summary judgment in favor of Sunburst. The Homeowners argue the 2007 CC&Rs are invalid because: (1) the proposed amendments required the unanimous consent of all property owners; (2) the ballot improperly posed five independent actions in a single question; (3) the ballot presented an "all or nothing" proposition, which automatically failed when rejected by the property owners of Section No. 7; and (4) no admissible evidence substantiates the purported election results.

**¶13** In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). "We determine de novo whether any genuine issues of material fact exist and whether the [superior] court correctly applied the law." *Diaz v. Phoenix Lubrication Serv., Inc.*, 224 Ariz. 335, 338, ¶ 10 (App. 2010); *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.").

**¶14** Statutory interpretation is a question of law that we review de novo. *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 17 (App. 2010). Likewise, we review de novo contract interpretation and the superior court's legal conclusions. *Id.*

**I.     Amendment by Majority Vote**

**¶15** The Homeowners contend the 2007 CC&Rs are invalid because the amended restrictions providing for mandatory payment obligations and the imposition of liens were not approved by unanimous consent.

**¶16** First, according to the Homeowners, some property owners from Section Nos. 3 and 4 are not members of Sunburst, and therefore mandatory payment obligations may not be imposed by a majority vote. As proscribed by statute, a homeowners' association, which operates as a non-profit corporation, may not impose membership on property owners absent their express or implied consent. A.R.S. § 10-3601(B). "[T]o impose

automatic membership on owners of property located within a neighborhood or community development, th[e] requirement must appear in a deed restriction embodied within a recorded instrument." *Shamrock v. Wagon Wheel Park Homeowners Ass'n*, 206 Ariz. 42, 45, ¶ 14 (App. 2003). "Such a restriction constitutes a contract between the subdivision's property owners as a whole and the individual lot owners." *Id.* (internal quotations omitted). "By accepting a deed subject to deed restrictions, [a property owner] assents to such restrictions and is bound by them." *Dreamland Villa*, 224 Ariz. at 47, ¶ 19.

¶17        While the property owners from Section No. 7 eliminated the automatic membership provision in their first amended CC&Rs, the property owners from Section Nos. 3 and 4 failed to do so. Instead, as relevant here, they revoked only their original CC&Rs' restrictions for mandatory payment obligations and the imposition of liens.

¶18        Despite the clear language of the first amended CC&Rs for Section Nos. 3 and 4, providing for automatic membership in the association, the Homeowners cite *Duffy* for the proposition that they "escaped from forced membership in the association" through a majority vote. 123 Ariz. at 416. Although the *Duffy* opinion incorrectly conflates the first amended CC&Rs for Section No. 7 with those for Section Nos. 3 and 4, the cited, imprecise language the Homeowners rely upon was extraneous to the supreme court's ultimate conclusion that the property owners from Section Nos. 3, 4 and 7 validly revoked their respective, original CC&Rs' mandatory payment obligations through a majority vote. *Id.* at 417.

¶19        To be clear, the first amended CC&Rs for Section Nos. 3 and 4 plainly and unambiguously retained automatic membership restrictions. By purchasing property subject to those restrictions, the Homeowners impliedly consented to Sunburst membership.[2]

---

[2]        Asserting the association did not impose automatic membership for property owners from Section Nos. 3 and 4 pursuant to settlement agreements reached in 1985 and 2004, the Homeowners contend that Sunburst's "course of conduct" precludes enforcement of the automatic membership restrictions now. But as the Homeowners acknowledge, these settlement agreements were subsequently deemed invalid amendments to the first amended CC&Rs because they were not approved by a majority of the property owners. In their reply brief, the Homeowners also assert that they relied upon a recorded notice of such settlement agreements when

¶20 Irrespective of membership, the Homeowners maintain they did not consent to mandatory payment obligations, and therefore the 2007 CC&Rs are invalid. By statute, "[a] member may become liable" to an association for dues, assessments and fees through either an express or implied agreement. *See* A.R.S. § 10-3613(A).

¶21 When the Homeowners purchased their property, the first amended CC&Rs for Section Nos. 3 and 4 omitted any restrictions for mandatory assessments and dues. However, the absence of such restrictions is not, alone, dispositive.

¶22 In *Dreamland Villa*, we considered this question—whether a community's CC&Rs may be amended by a majority vote to impose mandatory association dues and assessments. 224 Ariz. at 49, ¶ 30. Based on the historic (since inception) voluntary nature of the *Dreamland Villa* association membership, the lack of any common areas in the *Dreamland Villa* community, and the absence of any right appurtenant in lot ownership to membership, we concluded that the CC&Rs' express authority to amend by majority vote did not permit "one group of lot owners" to "in effect, take the property of another group in order to fund activities that d[id] not universally benefit each homeowner's property or areas owned in common by all." 224 Ariz. at 51, ¶ 36. Essentially, we determined that the *Dreamland Villa* homebuyers had no notice they may be subjected to mandatory payment obligations at the time of purchase, and because such restrictions were not otherwise reasonably foreseeable, the imposition of such restrictions was inherently unfair. *Id*. at 49–51, ¶¶ 28–36.

¶23 Unlike the *Dreamland Villa* community, the property owners of Sunburst Farms East, at one time, shared common areas. As defined by statute, a "common area" is "real property that is intended for the use of owners and residents of a residential subdivision or development." A.R.S. § 42-13402(B). To be classified as a common area, a property must meet five criteria: (1) a homeowners' association must own the property, (2) the association must be organized and operated to provide for the maintenance and management of the common area property, (3) all residential property owners in the development must be required to be members of the association or must be obligated to pay mandatory assessments to maintain

they acquired their properties. Because the Homeowners failed to raise this claim in their opening brief, we do not address it. *In re Marriage of Pownall*, 197 Ariz. 577, 583, ¶ 25 n. 5 (App. 2000) (holding issues raised for the first time in a reply brief are waived).

and manage the common areas, (4) all members of the association must have a right to use and enjoy the common areas, and (5) the common areas must be deeded to the association or corporation. *Id.*

¶24 Before or soon after the Sections were built-out, the developer deeded a parcel of real property containing a private well to SFEM. And, from the community's inception, SFEM owned Sunburst Farms East's irrigation infrastructure, including well-stands, pumps, and piping on and through each lot.

¶25 As explained in the Sections' respective original CC&Rs, SFEM was expressly created to maintain the irrigation system for the benefit of all property owners. That is, each property owner had a right to use the irrigation services.

¶26 In contrast to the historic nature of the association at issue in *Dreamland Villa*, here, the original CC&Rs provided for automatic membership and mandatory payment obligations. Although Section Nos. 3 and 4 subsequently revoked the mandatory payment obligations by majority vote, the Homeowners were on notice that: (1) association dues had, at one time, been compulsory; and (2) the first amended CC&Rs retained the majority vote clause that had permitted the revocation of that restriction.

¶27 Finally, all Sunburst Farms East property owners have a right to irrigation services. While the well and irrigation infrastructure are no longer "common areas" under A.R.S. § 42-13402(B)(3), based on Section No. 7's revocation of its automatic association membership restriction, the Section No. 7 property owners may still avail themselves of irrigation services. The Homeowners assert that many property owners from the four Sections decline such services, noting that some properties have tennis courts, pools, or desert landscaping such that irrigation is undesirable. But, the particular land-use choices of individual property owners do not negate that the association offers the services community-wide.

¶28 Considering the historic nature of the association, the benefit the once-common areas provide the community, and the retention of the majority vote clause in the first amended CC&Rs, we cannot say that a majority vote reverting to mandatory payment obligations was either unforeseeable or unfair. Therefore, the superior court did not err by finding

adoption of the 2007 CC&Rs required only a majority vote, not unanimous consent.[3]

## II.    Legal Sufficiency of the Ballot

**¶29**        The Homeowners next contend the 2007 ballot impermissibly combined multiple proposed actions in a single question. Specifically, the Homeowners assert the ballot failed to provide the property owners with the opportunity to vote for or against the amendment of each Section's CC&Rs and Sunburst's by-laws.

**¶30**        The ballot submitted to the property owners provided the following binary choice:

Proposed Action: To vote on the revised amended and restated Declaration of Covenants, Conditions and Restrictions for Sunburst Farms East 2, 3, 4, 7 and Sunburst Farms East By-Laws.

____ I VOTE TO AMEND AND RESTATE THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SUNBURST FARMS EAST 2, 3, 4, 7 AND SUNBURST FARMS EAST BY-LAWS.

Voting for this option means that you approve the revisions dated 11/01/2007 to the above[-]mentioned governing documents.

____ I VOTE NOT TO AMEND THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR SUNBURST FARMS EAST 2, 3, 4, 7 AND THE SUNBURST FARMS EAST BY-LAWS.

Voting for this option means that you do not approve the revisions to the Sunburst Farms East Inc. governing

---

[3]        The Homeowners also cite Restatement (Third) Property–Servitudes, § 6.10(3)(b) for the proposition that a CC&Rs' assessment provisions may not be changed absent unanimous approval, unless the CC&Rs otherwise expressly authorize such an amendment. As found by our supreme court in *Duffy*, the Sections' CC&Rs contain a modification clause that expressly permits amendments to assessment provisions by majority vote. 124 Ariz. at 415.

documents and that you are aware that the existing documents will remain in force.

. . . .

Section 2 needs 41 votes to pass, Section 3 needs 41 votes to pass, Section 4 needs 41 votes to pass and Section 7 needs 22 votes to pass.

¶31    As outlined in A.R.S. § 10-3708(B), a written ballot must: (1) set forth each proposed action, and (2) provide an opportunity to vote for or against each proposed action. Akin to the Arizona Constitution's separate amendment rule, *see* Ariz. Const. art. 21, § 1, compliance with this statute ensures that voters "are allowed to express their separate opinion" as to each proposed action. *McLaughlin v. Bennett*, 225 Ariz. 351, 353, ¶ 7 (2010).

¶32    We review de novo whether a measure complies with the statutory requirements. *See Save Our Vote v. Bennett*, 231 Ariz. 145, 149, ¶ 12 (2013). Borrowing the analytic framework applied to constitutional separate amendment challenges, we examine whether the provisions of a proposed action "are sufficiently related to a common purpose or principle that the proposal can be said to constitute a consistent and workable whole on the general topic embraced, that, logically speaking . . . should stand or fall as a whole." *Id.* (internal quotation omitted). Under this framework, we consider whether a proposed action's provisions are both "topically related" and "sufficiently interrelated so as to form a consistent and workable" action. *Id.*

¶33    In this case, the 2007 ballot presented the property owners with a single question—whether to amend the "Declaration of Covenants, Conditions and Restrictions for Sunburst Farms East 2, 3, 4, 7 and Sunburst Farms East By-Laws." Although the Homeowners argue the property owners should have had an opportunity to independently vote on the amendments to the CC&Rs and the corresponding by-law amendments, the amendments to both governing documents were topically related—that is, the by-laws were amended to conform to the 2007 CC&Rs, providing that all Sections were subject to a uniform CC&Rs. The amendments to both documents were also sufficiently interrelated to comply with A.R.S. § 10-3708(B). That is, the proposed amendments to the by-laws were designed to take effect only if a majority of the voters adopted the proposed amendments to the CC&Rs. Because the two actions shared a common

purpose and were not intended to operate independently, they were properly joined.

¶34 To the extent the Homeowners also contend the ballot posed four independent actions by asking the property owners to vote on separate amendments to each Section's CC&Rs, such argument is equally unavailing. The ballot proposed the adoption of a single governing document for the Sunburst Farms East subdivision, not separate and distinct amendments to each Section's CC&Rs. Therefore, the superior court did not err by finding the ballot legally sufficient.

## III. Effect of the Election

¶35 Alternatively, the Homeowners argue the proposed action outlined in the ballot expressly conditioned adoption of the 2007 CC&Rs on the approval of a majority of the property owners from each Section. Working from this premise, the Homeowners assert the 2007 CC&Rs never became effective because a majority of Section No. 7's property owners did not vote for the amendments.

¶36 This argument is consistent with both Sunburst's representations to the property owners in advance of the election and its positions before the superior court during most of the litigation. In response to the Homeowners' A.R.S. § 10-3708(B) claim that the ballot was legally insufficient, Sunburst argued that the ballot provided each property owner the opportunity to vote separately and directly on "the only issue at hand, which was to amend the community documents as a whole, or not." Addressing the same concerns, Sunburst also explained that the proposed by-law amendments sought only to conform the by-laws to the 2007 CC&Rs by recognizing that all Sections were subject to a singular governing document rather than distinct CC&Rs. In making this argument, Sunburst expressly conceded that the by-laws would not have been amended if each Section did not approve the 2007 CC&Rs. Once the Homeowners discovered that a majority of Section No. 7's property owners did not vote in favor of the 2007 CC&Rs and corresponding by-law amendments, however, Sunburst argued that the ballot presented the property owners with the opportunity to vote for or against independent amendments to their respective Sections' CC&Rs.

¶37 Without deciding whether Sunburst is procedurally barred from advancing an inconsistent position, *see Bank Am. Nat. Tr. & Sav. Ass'n v. Maricopa County*, 196 Ariz. 173, 175, ¶ 7 (App. 1999) (judicial estoppel prevents a party from asserting inconsistent positions on the same issues

upon which it prevailed), we address the merits of this claim. To discern the ballot issue placed before the voters, we interpret the language used, giving words "their natural, obvious and ordinary meaning." *See Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 7, ¶ 21 (2013) (internal quotation omitted). When language is clear and unambiguous, we apply its plain meaning without resorting to other means of construction. *See Calik v. Kongable*, 195 Ariz. 496, 498, ¶ 10 (1999).

**¶38** As explained in its "Proposed Action" statement, the ballot provided the property owners an opportunity "[t]o vote on the revised amended and restated Declaration of Covenants, Conditions and Restrictions for Sunburst Farms East 2, 3, 4, 7 and Sunburst Farms East By-Laws." The ballot also informed the property owners how many votes were required from each Section to adopt the measure: "Section 2 needs 41 votes to pass, Section 3 needs 41 votes to pass, Section 4 needs 41 votes to pass and Section 7 needs 22 votes to pass."

**¶39** Arguably, this language is ambiguous and may reasonably be construed as allowing property owners to either: (1) vote for or against adopting a single, uniform CC&Rs to govern the entire Sunburst Farms East community; or (2) independently vote for or against amending their own Sections' CC&Rs. However, the ballot expressly stated that voting for the proposed action "means that [the voter] approve[d] the revisions dated 11/01/2007 to the above[-]mentioned governing documents." By referencing the 2007 CC&Rs and the corresponding by-law amendments, Sunburst incorporated those documents into the ballot, and thereby clarified that the proposed action asked the property owners to vote for or against a single, uniform CC&Rs to govern the entire subdivision. Stated differently, incorporation of the 2007 CC&Rs removed any ambiguity regarding the intent of the proposed action because the document expressly states that: (1) it governs all Sections of Sunburst Farms East, (2) a majority of property owners from each of the Sections approved the amendments, and (3) previously recorded CC&Rs from any of the Sections, as well as all prior settlement agreements and judgments, are superseded in their entirety. Moreover, the 2007 CC&Rs define the term "property" as encompassing all the lots from each of the Sections.

**¶40** Nonetheless, Sunburst argues that the plain language of the 2007 CC&Rs is not determinative because "there was no other way to draft [the CC&Rs] prior to the vote." This is only true, however, if the 2007 CC&Rs were intended to supplant all other CC&Rs. Had Sunburst intended to present the property owners with the opportunity to vote for or against mandatory payment obligations in their respective Section's CC&Rs, it

could have drafted four discrete amended CC&Rs and permitted the property owners to independently vote for or against amending their Sections' governing document. In the event a majority of voters from each Section approved the proposed CC&Rs, the four distinct documents could have been merged into a single, uniform CC&Rs for the entire community. While Sunburst argues that any reference to Section No. 7 may be removed through the 2007 CC&Rs' severability clause the property owners of Section No. 7 are indispensable parties to the contract submitted to the property owners for a vote, not merely an omittable "provision" as Sunburst suggests.

**¶41**        Given the proposed action presented to the property owners, as made clear by the referenced and incorporated 2007 CC&Rs, adoption of the amendments was conditioned upon the approval of a majority of the property owners from each Section. Because Section No. 7 failed to approve the measure, it did not pass, and the superior court therefore erred by entering summary judgment validating the 2007 CC&Rs for Section Nos. 2, 3 and 4.

## CONCLUSION

**¶42**        We hold, as a matter of law, that the 2007 CC&Rs are invalid. We, therefore, vacate the superior court's entry of summary judgment in favor of Sunburst, as well as its declaratory judgment providing an award of attorney fees to Sunburst, and remand for further proceedings, including entry of summary judgment in favor of the Homeowners. *See Roosevelt Sav. Bank of City of N.Y. v. State Farm Fire & Cas. Co.*, 27 Ariz. App. 522, 526 (1976) (explaining an appellate court may direct entry of judgment in favor of a party filing a cross-motion for summary judgment with identical legal issues that can be decided as a matter of law). Both parties request awards of attorney fees pursuant to A.R.S. § 12-341.01. In our discretion, we decline to award fees but award costs on appeal to the Homeowners subject to their compliance with ARCAP 21(a).



AMY M. WOOD • Clerk of the Court
FILED: AA